## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### SOUTHERN RAILWAY CO. V. POWELL AND OTHERS.

#### November 14, 1918.

1. EMINENT DOMAIN—*"Understanding" as to Crossing Embodied in Report—Case at Bar—"Understanding."*—Defendant railroad company set on foot proceedings to condemn so much of plaintiffs' farm as might be necessary to double-track its main line over the same. The commissioners allowed $2,500 damages for the land taken, superadding to their report the following clause: "The above report is made with the understanding that the Southern Railway Company is to build a crossing for the landowners at the present location of the road, and the landowners have the right to move the tobacco house on the land." The report was confirmed by the court without exception. The railroad refused to build the crossing, and plaintiff, in a proceeding by notice of motion for judgment, recovered judgment against defendant company.

   *Held:* That the action of the commissioners in setting forth in their report, as a part of it, the "understanding" as to the crossing, was authorized by the eminent domain act, section 1105-f, clause 20, Code of 1904.

2. EMINENT DOMAIN—*"Understanding" as to Crossing Embodied in Report of Commissioners—"Understanding."*—The commissioners manifestly had clause 20, section 1105-f, Code of 1904, in mind, and the language adopted to apply that provision to the subject matter was not inappropriate. The pivotal word selected, "understanding" (in the sentence, "The above report is made with the understanding that the Southern Railway Company is to build a crossing for the landowners at the present location of the road, and the landowners to have the right to move the tobacco house on the land"), is the equivalent of "An agreement between two or more persons; an informal compact." Standard Dict. (Funk & Wagnalls). The parties to be affected were the railway company, on the one part, and the landowners on the other; and the reasonable inference from the language of the report is that it was based

9

upon the "understanding," "agreement," or "compact," be-
tween them that these things in which both were interested
were to be done, the one by plaintiffs and the other by de-
fendant.

3.  EMINENT DOMAIN—*Clause 20, "Eminent Domain .Act"—Liberal
Construction.*—Clause 20, "eminent domain act," section
1105-f, Code of 1904, is a most useful enactment, and cases
coming within its terms should receive favorable considera-
tion from the courts; and where one interpretation of the
language of the report would give it effect under the statute
and the other nullify it, the former should be preferred.

Error to a judgment of the Circuit Court of Nelson
county, in a proceeding by notice of motion for judgment.
Judgment for plaintiffs. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*J. T. Coleman, Jr.,* for the plaintiff in error.

*C. J. Campbell* and *S. B. Whitehead,* for the defendants
in error.

WHITTLE, P., delivered the opinion of the court.

The judgment brought to our attention by this writ of
error was recovered by defendants in error against the
Southern Railway Company in a proceeding by notice of
motion for judgment.

The facts out of which the litigation arose may be sum-
marized as follows: Defendant set on foot proceedings to
condemn so much of plaintiff's farm of 500 acres, located
in Nelson county, as might be necessary to double track its
main line over the same as part of a general scheme to
double track its entire route from Washington city to At-
lanta, Georgia. The commissioners allowed $2,500 for the

land taken, superadding to their report the following clause: "The above report is made with the understanding that the Southern Railway Company is to build a crossing for the landowners at the present location of the road, and the landowners to have the right to remove the tobacco house on the land." The report as a whole was approved and confirmed by the court without exception. No objection was made to the removal of the tobacco house; but it appearing that defendant did not intend to make the crossing in accordance with the stipulation of the report of the commissioners, and was proceeding to construct an immense fill between hills at that point, which divided the farm into two parts, and which, without the crossing, greatly impaired its value, plaintiffs applied for an injunction, which was refused. They then proceeded under the statute to take steps to locate a wagonway over defendant's new tracks. The commissioners refused to establish the crossing asked for but reported in favor of a different crossing and in addition allowed $200 damages. The report was excepted to by plaintiffs, because the crossing was not located as requested; and the defendant filed exception to the allowance of damages. The court overruled plaintiffs' exception but sustained that of the defendant and confirmed the report.

The order of confirmation declares: "But this action of the court is without prejudice to the rights of the plaintiffs, if any such they have, to maintain any such suit or action as they may see fit to bring, arising out of the failure of the Southern Railway Company to construct a crossing at the point designated by the report * * * in the condemnation proceedings of *Southern Railway Company* v. *Edmonia Powell and others*." Whereupon, plaintiffs instituted against defendant the proceedings which resulted in the recovery of the judgment now under review.

The entire fabric of the defense to plaintiffs' motion in

the circuit court, and the controlling ground upon which defendant seeks to obtain a reversal of the judgment recovered in that proceeding upon this writ of error, rests upon the assumption that the action of the commissioners in the condemnation proceeding in setting forth in their report, as a part of it, "the understanding that the Southern Railway Company is to build a crossing for the landowners at the present location of the road," was *ultra vires* and of no binding effect. That central idea was sought to be impressed at every stage of the litigation, by demurrer to the notice, by special pleas, by instructions, and, finally, by motion to set aside the verdict of the jury as contrary to the law and the evidence. But at last all of these defenses hark back to and are based upon the proposition that the action of the commissioners was a nullity. If that contention is unsound, it follows that the order confirming the report to which there was no exception is decisive of the controversy.

The authority for the action of the commissioners will be found in the "eminent domain act," Code 1904, section 1105-f, clause 20.

"If the company and the person whose land, or any interest or estate therein, is being condemned under the provisions of this act shall, before the commissioners make their report, enter into any contract in relation to the building, operating, or maintaining the proposed work, or in relation to fencing, culverts, depots, stations, crossings, sidings, cattle guards, damage from fire, injury to or destruction of property, real or personal, or like matters, it shall be the duty of the said commissioners, if said contract is brought to their attention by the parties thereto, to set forth such contract in their report, to be considered and acted on by the court as a part of the said report; and if the said report be confirmed, and the land, or the interest or estate therein, be taken, the said contract shall thereafter run as a covenant with the said land, or with the interest or estate therein, so taken."

[1, 2] Construing the commissioners' report in the light of the surrounding circumstances, we have no difficulty in concluding that it is within the intendment of clause 20. The physical conditions were these: The proposed right of way was crossed by a private road, which was essential to con- nect the parts of the farm to be separated thereby; and, moreover, there stood upon the land to be condemned a tobacco house belonging to plaintiffs. The parties were present, or represented by counsel, and it cannot be doubted that these matters were made the subject of adjustment and compact between them. The report of the commissioners, in which the terms of the settlement are set forth with un- mistakable clearness, was written by counsel for the de- fendant and scrutinized by opposing counsel; and it would be an unwarrantable inference, both from the circumstances and language employed, that those gentlemen, learned in the law, were engaged in an idle ceremony. They mani- festly had clause 20 in mind, and the language adopted to apply that provision to the subject matter was not inap- propriate. The pivotal word selected, "understanding" (in the sentence, "The above report is made with the under- standing that the Southern Railway Company is to build a crossing for the landowners at the present location of the road, and the landowners to have the right to move the tobacco house on the land"), is the equivalent of "An agree- ment between two or more persons; an informal compact." Standard Dict. (Funk & Wagnalls). And Webster's New International Dictionary defines "understanding" to be "An agreement of opinion or feeling; adjustment of dif- ferences; anything mutually understood or agreed upon." The parties to be affected were the Southern Railway Com- pany, on the one part, and the landowners on the other; and the reasonable inference from the language of the re- port is that it was based upon the "understanding," "agree- ment," or "compact," between them that these things in which both were interested were to be done, the one by plaintiffs and the other by defendant.

[3] Clause 20 is a most useful enactment, and cases coming within its terms should receive favorable consideration from the courts; and where one interpretation of the language of the report would give it effect under the statute and the other nullify it, the former should be preferred.

In *Shenandoah Valley R. Co.* v. *Robinson,* 82 Va. 542, it was held, where the company agreed to erect a depot on the land, and, in consequence, secured a lower assessment for the land taken for its purposes, that a suit in equity would not lie to set aside the order confirming the report of the commissioners, because the landowner had a complete and adequate remedy at law to recover damages in such case.

The evidence in the present case showed that the commissioners would have awarded larger damages, but for the understanding with respect to the construction of the crossing and the removal of the tobacco house.

Our attention is drawn to the case of *Swann* v. *Washington-Southern R. Co.,* 108 Va. 282, 61 S. E. 750, as sustaining the contention that the clause in the commissioners' report involved in this case should be rejected as surplusage. But an examination of that case will show that it is essentially different from the case in judgment. That was a proceeding to condemn certain easements of rights of way which plaintiff in error owned over the land of the defendant in error. The commissioners, as they were ordered to do, fixed the amount of damages to the landowner for the property condemned at a given sum; and then, on their own initiative, made an alternative award of a less sum, provided the party seeking to condemn would do certain things, to which the owner was opposed, as shown by exception to the report. In these circumstances, the alternative assessment was stricken out as surplusage.

We are of opinion that the judgment complained of is plainly right and must be affirmed.

*Affirmed.*