The **M. M. CROCKIN COMPANY**, Inc., a Virginia corporation, et al., Appellants,

v.

**PORTSMOUTH REDEVELOPMENT AND HOUSING AUTHORITY** et al., Appellees.

No. 15092.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 13, 1970.

Decided Feb. 2, 1971.

---

Robert C. Nusbaum and Alan J. Hofheimer, Norfolk, Va. (Hofheimer, Nusbaum & McPhaul, Norfolk, Va., on the brief), for appellants.

William T. Mason, Jr., Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on the brief), for appellee George Romney.

H. Thomas Fennell, Jr., Portsmouth, Va. (Cooper & Davis, Portsmouth, Va., on the brief), for appellees Portsmouth Redevelopment and Housing Authority and Carroll A. Mason.

Before HAYNSWORTH, Chief Judge, and BOREMAN, and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

The M. M. Crockin Company (Crockin) [1] seeks to prevent the Department of Housing and Urban Development (HUD) and the Portsmouth Redevelopment and Housing Authority (PRHA) from dismembering its retail business. The district court dismissed the action for failure to state a claim for which relief can be granted and for lack of jurisdiction. We reverse.

## I.

For the purpose of this appeal we must accept as true the facts that the plaintiffs have pleaded. Crockin operates a furniture and carpeting retail business in Portsmouth, Virginia. The furniture department occupies a modern building costing about $250,000; carpeting, accounting for some 35% of the store's business, is sold from an adjoining wing. The two departments constitute one business located on property covered by a single long-term lease.

The business is near the geographical center of a downtown commercial area that PRHA plans to renew under a loan and capital grant contract with HUD. PRHA designated the Crockin furniture store as "not to be acquired," which, by the terms of the plan, means the property is compatible with the plan's objectives. The connected building housing the carpet department was, however, marked for destruction and redevelopment. Crockin informed PRHA of the integrated nature of its business and attempted to impress upon PRHA the necessity of relocating the carpet department adjacent to the main store.

Early in 1968, HUD approved PRHA's general plan, which made no mention of Crockin's singular relocation requirements. In 1969, PRHA commenced a condemnation suit in a state court to acquire the property the carpet department occupied. In its answer, Crockin again pointed out that the loss of its carpet operation would materially damage the rest of its business and that the partial taking would entail consequential damages beyond the fair market value of the property. The parties compromised. PRHA orally promised Crockin it could acquire a parcel designated 9–A, adjacent to the furniture store, and that the dimensions of 9–A would be redrawn to meet Crockin's need to relocate the carpet department. In return Crockin relinquished its claim to some of the severance damages it would have suffered without relocation on parcel 9–A.

In April 1970, PRHA published in the local newspapers side-by-side invitations to bid on parcel 9–A and an adjacent parcel 10 in the renewal area. The bid invitation for 9–A specified as permitted uses: "Retail commercial including clothing sales, furniture sales, appliances, and other similar type retail outlets." When Crockin inquired of PRHA how their relocation agreement was to be implemented, PRHA led Crockin to

---

1. The plaintiffs are the M. M. Crockin Company, Inc., and the executors and trustees under the will of Albert Sylvester Crockin, the company's landlord. For the purposes of this appeal the interests of all the plaintiffs are similar, and collectively they will be called Crockin.

believe that it would be highly desirable, if not necessary, to bid on both parcels in a unified proposal for redevelopment. While having no particular interest in parcel 10, Crockin made a combination proposal in order to be able to relocate on 9–A. By this time, the dimensions of 9–A had been amended to conform to Crockin's relocation needs, although the bid invitation incorrectly described the lot. In July, however, PRHA announced its acceptance of the bid of George T. McLean Enterprises for parcels 9–A and 10. McLean proposes to use 9–A as a parking lot for ten cars to serve a commercial building on parcel 10.

The failure of PRHA to make parcel 9–A available to Crockin probably will cause the discontinuation of the carpet business. Because furniture and carpeting are complementary commodities, relocating the carpet department anywhere but on parcel 9–A would be economically impractical.

After PRHA affirmed its intention to sell parcel 9–A to McLean, Crockin brought this action to enjoin PRHA from conveying parcel 9–A until it has a reasonable opportunity to purchase the lot at the price PRHA contemplated. In addition, Crockin seeks to enjoin the Secretary of Housing and Urban Development from approving any conveyance or contract of sale of parcel 9–A until HUD and PRHA meet the relocation requirements of federal law.

## II.

Both HUD and PRHA challenge Crockin's standing to bring this action, but this issue, once a major impediment to litigants attacking urban renewal, no longer presents a serious problem. Recent opinions of the Supreme Court [2] clearly indicate that cases [3] denying standing to persons displaced by renewal projects should not be followed. Starting with the general principle that federal courts must consider standing within the framework of the constitutional limitation on judicial power to cases and controversies, the Court, in Association of Data Processing Service Organizations, Inc., v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), held that a plaintiff has standing if it "alleges that the challenged action has caused him injury in fact, economic or otherwise," 397 U.S. at 152, 90 S.Ct. at 829, and "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected * * * by the statute or constitutional guarantee in question." 397 U.S. at 153, 90 S.Ct. at 830.

Crockin's complaint that its business will be damaged by displacement of the carpet department in violation of its statutory, constitutional, and contractual rights adequately pleads a case or controversy involving economic injury. Crockin also satisfies the second test of standing. Its interest in relocating its carpet business is plainly among those to be protected by 42 U.S.C. § 1455(c) (1), which specifically requires a relocation assistance program for business concerns displaced by federally subsidized urban renewal projects.[4]

2. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Hardin v. Kentucky Utilities Co., 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968).

3. E. g., Green Street Ass'n v. Daley, 373 F.2d 1 (7th Cir.), cert. denied, 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 995 (1967); Johnson v. Redevelopment Agency, 317 F.2d 872 (9th Cir.), cert. denied, 375 U.S. 915, 84 S.Ct. 216, 11 L.Ed.2d 154 (1963); Harrison-Halsted Community Group v. Housing and Home Finance Agency, 310 F.2d 99 (7th Cir. 1962), cert. denied, 373 U.S. 914, 83 S.Ct. 1297, 10 L.Ed.2d 414 (1963).

4. 42 U.S.C. § 1455, as amended, (Supp. V, 1969) provides:
"Contracts for loans or capital grants shall be made only with a duly authorized local public agency and shall require that—
* * * * *
"(c) (1) There shall be a feasible method for the temporary relocation of individuals and families displaced

Since the statute neither precludes judicial review of agency decisions about the relocation program nor commits its administration solely to the discretion of the agency, Crockin may obtain review as a party "aggrieved by agency action within the meaning of a relevant statute." Administrative Procedure Act, 5 U.S.C. §§ 701(a), 702. Indeed, even before the Supreme Court recently clarified the requirements of standing, a number of courts in carefully reasoned opinions held that people displaced by urban renewal have standing to challenge the adequacy of measures for their relocation.[5]

### III.

Crockin contends, first, that PRHA's relocation plan is inadequate and should not have been approved; and second, if the plan is adequate, PRHA has failed to execute it properly. The defendants argue, as they did in the district court, that the complaint fails to state a cause of action because the requirements of 42 U.S.C. § 1455(c) (1) have been satisfied by an approved temporary relocation plan that will furnish information to businesses in need of relocation assistance. Since the statute has been satisfied, the defendants continue, HUD was improperly joined, and only a controversy over a breach of contract remains. Their argument concludes that in the absence of diversity between Crockin and PRHA, the district court lacks jurisdiction, and the parties should litigate the alleged breach of contract in state courts.

The defendants' reliance on the statute's reference to "temporary relocation" is misplaced. This provision applies, not to businesses, but to residents of the renewal area. See 1949 U.S.Code Cong. Service, p. 1563; 1965 U.S.Code

from the urban renewal area, and there are or are being provided, in the urban renewal area or in other areas not generally less desirable in regard to public utilities and public and commercial facilities and at rents or prices within the financial means of the individuals and families displaced from the urban renewal area, decent, safe, and sanitary dwellings equal in number to the number of and available to such displaced individuals and families and reasonably accessible to their places of employment. The Secretary shall issue rules and regulations to aid in implementing the requirements of this subsection and in otherwise achieving the objectives of this subchapter. Such rules and regulations shall require that there be established, at the earliest practicable time, for each urban renewal project involving the displacement of individuals, families, and business concerns occupying property in the urban renewal area, a relocation assistance program which shall include such measures, facilities, and services as may be necessary or appropriate in order (A) to determine the needs of such individuals, families, and business concerns for relocation assistance; (B) to provide information and assistance to aid in relocation and otherwise minimize the hardships of displacement, including information as to real estate agencies, brokers, and boards in or near the urban renewal area which deal in residential or business property that might be appropriate for the relocating of displaced individuals, families, and business concerns; and (C) to assure the necessary coordination of relocation activities with other project activities and other planned or proposed governmental actions in the community which may affect the carrying out of the relocation program, particularly planned or proposed low-rent housing projects to be constructed in or near the urban renewal area."

5. Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir. 1968); Western Addition Community Org. v. Weaver, 294 F.Supp. 433 (N.D. Cal.1968); Powelton Civic Home Owners Ass'n v. Dept. of Housing and Urban Dev., 284 F.Supp. 809 (E.D.Pa.1968); cf. Merge v. Sharott, 341 F.2d 989 (3rd Cir. 1965). See McGee, Urban Renewal in the Crucible of Judicial Review, 56 Va.L.Rev. 826 (1970); Tondro, Urban Renewal Relocation: Problems in Enforcement of Conditions on Federal Grants to Local Agencies, 117 U.Pa.L. Rev. 183 (1968); Note, Judicial Review of Displacee Relocation in Urban Renewal, 77 Yale L.J. 966 (1968); Note, The Federal Courts and Urban Renewal, 69 Colum.L.Rev. 472 (1969).

Cong. and Admin.News, p. 2644. Nor should the statute be read as narrowly as the defendants suggest. To be sure, it requires a local public authority contracting with HUD to furnish information that will aid businesses to relocate, but it also requires much more. In plain terms, it directs the Secretary to issue regulations that will require the redevelopment agency to include in its plan measures, facilities, and services "(A) to determine the needs of * * * business concerns for relocation assistance; (B) to provide * * * assistance to aid in relocation and otherwise minimize the hardships of displacement * * * and (C) to assure the necessary coordination of relocation activities with other project activities * * *."

PRHA submitted and HUD approved a relocation plan providing in part that PRHA would "[a]dvise and assist commercial tenants in relocation matters and insure the maximum opportunity for their satisfactory relocation." PRHA's obligation was not discharged by writing this broad commitment into its plan. It must also satisfactorily perform its undertaking, for without proper execution of the plan, the statute will fail to achieve its purpose. HUD has a duty under § 1455(c) (3) and 1456(h) to see that PRHA properly executes its relocation plan.[6] Crockin is entitled to judicial review of HUD's action in initially approving PRHA's plan and also

HUD's administrative review under § 1455(c) (3).[7]

Crockin also has a cause of action against PRHA, which, as a state-chartered corporation, is a separate entity with power to sue and be sued in its own right.[8] Congress enacted § 1455(c) (1) so that local redevelopment authorities would be required to provide effective relocation assistance to those displaced by urban renewal. Crockin, therefore, should have an opportunity to establish that PRHA has failed to comply with both the regulations prescribed by this statute and the plan it devised to discharge its statutory obligation. The legality of the relocation program should be determined in the light of Crockin's allegations that the only feasible assistance for relocation of the carpet department is to make parcel 9–A available; that PRHA recognized Crockin needed this assistance and had the ability to grant it; that the assistance was compatible with the use for which 9–A was designated in the urban renewal plan; and the use PRHA now proposes for it is incompatible.

### IV.

Since PRHA is a public corporation chartered by the state, its transaction with Crockin constituted state action affording Crockin the protection of the 14th Amendment. Crockin advances a two-pronged constitutional attack. The

6. 42 U.S.C. § 1455(c) (3) (Supp. V, 1969) provides:
   "Within one year after December 24, 1969, and every two years thereafter, the Secretary shall review each locality's relocation plan under this subsection and its effectiveness in carrying out such plan."
   42 U.S.C. § 1456(h) (Supp. I. 1965) provides:
   "Notwithstanding any other provision of this subchapter, no contract shall be entered into for any loan or capital grant under this subchapter with any local public agency unless the local public agency establishes, by evidence satisfactory to the Secretary, that any urban renewal project with respect to which such local public agency has re-

ceived a loan or capital grant under this subchapter has been, or will be, undertaken and carried out in substantial accordance with the urban renewal plan, and any amendments thereto, approved with respect to such project, and the terms of the contract for loan or capital grant covering such project."

7. While this case was pending, the initial period of administrative review fixed by § 1455(c) (3) expired. On remand Crockin should be permitted to file a supplementary complaint seeking judicial review of the action taken by HUD pursuant to this statute.

8. Act of Assembly ch. 704 § 13 (1968); Va.Code Ann. § 13.1–3(b)· (1964).

first is a relatively simple charge that PRHA has denied it the equal protection of the laws because other owners of property adjoining the redevelopment area have been permitted to acquire renewal parcels for expansion. Whether this alleged disparate treatment is constitutionally permissible must await examination of the merits of the claim. Cf. Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir. 1968).

■ Crockin next asserts that its contract to acquire parcel 9–A was a part of the settlement of the condemnation suit by which PRHA obtained the premises used by the carpet department. Refusal to honor the contract, Crockin says, will enable PRHA to acquire this property without paying adequate compensation in the form of severance damages, for which it would otherwise be liable. Crockin claims, therefore, that PRHA's conveyance of parcel 9–A to McLean with HUD's acquiescence, would be a denial of due process under the 5th and 14th Amendments. This complaint also states a cause of action that must be tried on its merits.

## V.

■ While denying the existence of a contract for Crockin's acquisition of parcel 9–A, PRHA asserts as an alternative defense that the alleged contract is unenforceable because it violates 42 U.S.C. § 1455(e), which requires the local public agency to disclose information about the redevelopers.[9]

Crockin's contract, however, was not concerned merely with the disposition of land within the renewal area. Parcel 9–A consists in part of some of Crockin's property which PRHA condemned under Virginia law. Accordingly, § 1455(e) must be read along with Virginia's statute which recognizes the right of parties to a condemnation suit to enter into a contract affecting the amount of just compensation that must be paid the landowner.[10] The Supreme Court of Appeals of Virginia has held that this "most useful enactment" should be liberally construed, because if the contract is not given effect, the landowner will be deprived of full compensation. Southern Ry. Co. v. Powell, 124 Va. 65, 97 S.E. 357, 358 (1918). PRHA contends the statute is inapplicable because the contract was not presented to the court or incorporated in the report of the commissioner. But these omissions are immaterial for the condemnation suit was settled before it was tried. Finally, it is a simple matter for PRHA to now comply with the public disclosure requirements of § 1455(e) and thus give effect to the public policies of both the state and federal governments.

9. 42 U.S.C. § 1455(e) (1964), as amended, (Supp. III, 1967), provides:
  "No understanding with respect to, or contract for, the disposition of land within an urban renewal area shall be entered into by a local public agency unless the local public agency shall have first made public, in such form and manner as may be prescribed by the Secretary, (1) the name of the redeveloper, together with the names of its officers and principal members, shareholders and investors, and other interested parties, (2) the redeveloper's estimate of the cost of any residential redevelopment and rehabilitation, and (3) the redeveloper's estimate of rentals and sales prices of any proposed housing involved in such redevelopment and rehabilitation: Provided, That nothing in this subsection shall constitute a basis for contesting the conveyance of, or title to, such land."

10. Va.Code Ann. § 25–46.23 (1969) provides in part:
  "If the petitioner and the person whose property is being condemned * * * shall, before the report of just compensation is made, enter into any contract in relation to building, operating, or maintaining the proposed work * * * injury to or destruction of property, real or personal, or like matters, and introduce such contract at the trial of the issue of just compensation, such contract shall be accepted and made a part of the report of the award of just compensation * * *."

Crockin's claim that PRHA wrongfully refuses to convey parcel 9–A cannot be characterized as a simple breach of contract as the defendants insist. It has both statutory and constitutional implications that cannot be ignored. Assuming, as we must at this stage of the proceeding, that Crockin can prove its contract, the district court must determine whether to grant equitable relief or leave Crockin to an action for damages. In reaching a decision on this issue, the court cannot view the contract in isolation. It must consider the agreement in connection with PRHA's statutory obligation to assist Crockin to relocate its business.

The judgment of the district court is reversed, and this action is remanded for the entry of an interlocutory injunction preserving the status quo, and for trial of the case on its merits.