HOME FURNITURE COMPANY OF CHARLOTTE, INC., a corporation, et al., Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD) et al., Defendants.

No. 2702.

United States District Court, W. D. North Carolina, Charlotte Division.

March 29, 1971.

---

W. Thomas Ray and Hugh G. Casey, Jr., Charlotte, N. C., for plaintiffs.

David B. Sentelle, Asst. U. S. Atty., Thomas C. Creasy, Jr., W. A. Watts and Henry W. Underhill, Jr., City Attys., Charlotte, N. C., and Edwin R. Hazen, Dept. of HUD, Washington, D. C., for defendants.

### ORDER

McMILLAN, District Judge.

Three of the plaintiffs, Home Furniture Company, Denton Furniture Company and People's Furniture, Inc., are tenants of buildings in the heart of Charlotte. Some of the buildings front on Trade Street and some on College Street. The property has been acquired by the Redevelopment Commission of the City of Charlotte, with the usual federal, regional and national direction, support and financial assistance.

As of April, 1970, the City switched from previously announced plans to use nearby vacant property, and designated the block in which these businesses are located as the block for the construction of a new Civic Center. Plaintiffs have, since the suit was filed, been served with eviction notices.

Plaintiffs are thus in the unenviable position of "obstructing" civic progress.

The businesses operated by these plaintiffs are alleged by these plaintiffs to be dependent upon the proximity of the businesses to the "Square" one block away, at which all municipal bus lines intersect, and upon the proximity of other businesses catering to low income persons.

The urban renewal project will effectively destroy the major part of the "poor man's shopping center" of which plaintiffs say they are a part.

These plaintiffs, accepting the apparently inevitable, have announced their willingness to move, but contend that no reasonably satisfactory relocation site or sites have been suggested and that the defendants have not rendered the assistance in their relocation efforts which the statutes require.

The pertinent statute, 42 U.S.C. § 1455(c) (1), requires in pertinent part that the Secretary of Housing and Urban Development, by rules and regulations, shall require that there be established:

" * * * at the earliest practicable time, for each urban renewal project involving the displacement of individuals, families, *and business concerns* occupying property in the urban renewal area, or relocation assistance program which shall include such measures, facilities, and services as may be necessary ·or appropriate in order (A) *to determine the needs* of such individuals, families, and business concerns for relocation assistance; (B) *to provide information and assistance to aid in relocation* and otherwise minimize the hardships of displacement, including information as to real estate agencies, brokers, and boards in or near the urban renewal area which deal in residential or business property that might be appropriate for the relocating of displaced individuals, families, *and business concerns*; and (C) *to assure the necessary coordination of relocation activities with other project activities and other planned or proposed governmental actions in the community which may affect the*

*carrying out of the relocation program. \* \* \*"* (Emphasis added.)

From the affidavits and depositions in the file it is apparent that although the defendants are sympathetic with the plight of these plaintiffs, the matter of relocation, up until the latest hearing in this case on February 25, 1971, had been left almost entirely in the hands of the Redevelopment Commission, and that the sum of the results of the efforts of the Commission had been to lend a sympathetic ear and to provide lists of abandoned and vacant property which might be considered by the plaintiffs as relocation sites, and to provide the help in getting loans which the program calls for.

It further appears as a realistic matter that there are not enough sites in central Charlotte to which the various businesses involved in this project could be moved, and that the City and the Redevelopment Commission may have underestimated their duty under the law of the land.

In the case of M. M. Crockin Co. v. Portsmouth Redevelopment and Housing Authority et al., 437 F.2d 784, February 2, 1971, the Fourth Circuit Court of Appeals addressed itself to the problem of relocation assistance to commercial enterprises. It remanded to a federal district judge the problems of business relocation in the City of Portsmouth, and directed the court to enter an interlocutory injunction preserving the status quo and later, to try the case on the merits of the relocation efforts of the defendants. The opinion of the court contains the following pertinent principles:

" \* \* \* Nor should the statute be read as narrowly as the defendants suggest. To be sure, it requires a local public authority contracting with HUD to furnish information that will aid businesses to relocate, but *it also requires much more*. In plain terms, it directs the Secretary to issue regulations that will require the redevelopment agency to include in its plan measures, facilities, and services '(A) to determine the needs of \* \* \* business concerns for relocation assistance; (B) *to provide* \* \* \* *assistance to aid in relocation and otherwise minimize the hardships of displacement* \* \* \* and (C) to assure the necessary coordination of relocation activities with other project activities \* \* \*'

"PRHA submitted and HUD approved a relocation plan providing in part that PRHA would '[a]dvise *and assist* commercial tenants in relocation matters and insure the maximum opportunity for their satisfactory relocation.' PRHA's obligation was not discharged by writing this broad commitment into its plan. It *must also satisfactorily perform its undertaking,* for without proper execution of the plan, the statute will fail to achieve its purpose. HUD has a duty under §§ 1455(c) (3) and 1456(h) to see that PRHA properly executes its relocation plan. Crockin is entitled to judicial review of HUD's action in initially approving PRHA's plan and also HUD's administrative review under § 1455(c) (3).

"Crockin also has a cause of action against PRHA, which, as a state-chartered corporation, is a separate entity with power to sue and be sued in its own right. Congress enacted § 1455(c) (1) so that local redevelopment authorities would be required to provide *effective relocation assistance* to those displaced by urban renewal \* \* \*" (All emphasis supplied.)

The Circuit Court does not say what constitutes "effective relocation assistance." Being no wiser than the Circuit Court this court can not write a guidebook for the defendants as to what kind of assistance they should be providing and should have provided for the corporate plaintiffs. Having at least an average amount of civic pride, this court has viewed with considerable interest and excitement the prospects of the community benefits obviously obtainable from a well located and attractive Civic Center. With all these things in mind it

would be pleasant to say that the plaintiffs should "cooperate" and vacate their present locations *pro bono publico*.

██ The presumed general benefit to the public at large is not normally taken, however, as a valid excuse to ignore the statutory procedures required in the exercise of public power, especially when, as in the case of urban redevelopment, the controls which the local government under North Carolina law exerts over ultimate use of redeveloped areas are inexact, and the general uses to which redeveloped property is put may be "public" only in the sense that a more expensive building or enterprise is a better use than a dilapidated building or a low-key enterprise.

It is not too much to expect, after the many years of halting progress on Charlotte's urban redevelopment, that the fairness requirements of the statute as to the persons most drastically damaged by redevelopment shall be observed.

██ At the same time, plaintiffs must bear in mind that the question whether relocation assistance is "effective" is a question for the court to determine under all the circumstances; that the suitableness of a relocation site and the effectiveness of the relocation assistance are objective facts rather than matters of personal judgment by plaintiffs; and that the plaintiffs share the burden of continued efforts to find new locations for their operations.

The Fourth Circuit decision in M. M. Crockin Co. v. Portsmouth Redevelopment, etc., was discussed with the parties at the February 25 hearing. Starting shortly after that hearing the defendants appointed some additional committees and have filed various papers showing apparently renewed efforts toward relocation of the plaintiffs. There is no indication whether these efforts have been effective. The court assumes all parties are continuing to work on the problem. This order will continue in effect the restraint imposed on February 18, 1971, and call the attention of the parties specifically and formally to the requirements of the *M. M. Crockin Co.* decision.

Therefore, pending final trial and decision of this case on the merits, it is ordered:

1. That the defendants continue to allow the corporate plaintiffs the quiet enjoyment of their tenancies subject to the leases themselves, and within the tenor of the restraining order hitherto issued on the 18th day of February, 1971.

2. That pending a hearing on the merits the defendants develop an effective relocation assistance program for the corporate plaintiffs and others similarly situated in the urban renewal area.

3. That the possibility of allowing relocated businesses, singly or in groups, to relocate within or return to the redevelopment area be kept open as one of the live options.

4. That facts justifying or requiring any change in this order be brought promptly to the attention of the court as those facts may develop or be discovered.

5. No bond will be required of plaintiffs.