AMERICAN DRY CLEANERS AND LAUNDRY, INC., Appellee,

v.

The UNITED STATES DEPARTMENT OF TRANSPORTATION and its Secretary, the Federal Highway Administration and its Administrator, the North Carolina Department of Transportation, its Secretary and its State Highway Administrator, Appellants.

No. 83–1393.

United States Court of Appeals, Fourth Circuit.

Argued July 18, 1983.

Decided Nov. 30, 1983.

James E. Scapellato, Asst. Regional Counsel, U.S. Dept. of Transp., Atlanta, Ga. (James B. Richmond, Sp. Deputy Atty. Gen., N.C. Dept. of Justice, Raleigh, N.C., on brief), for appellants.

George Daly, Charlotte, N.C. (Nelson M. Casstevens, Jr., Casstevens & Hanner, Raleigh, N.C., on brief), for appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

WIDENER, Circuit Judge:

Appellants, the United States Department of Transportation and its Secretary, the Federal Highway Administration and its Administrator, and the North Carolina Department of Transportation, its Secretary and its State Highway Administrator (the government), appeal the grant of a preliminary injunction in favor of American Dry Cleaners and Laundry, Inc., plaintiff below, which effectually enjoins the completion of the Interstate 277 (I–277) highway project in Charlotte, North Carolina, until the government complies with certain provisions of the Uniform Relocation Assistance and Land Acquisition Policies Act of 1970, 42 U.S.C. § 4601, et seq. (Act) as construed by the district court. Because we find that the district court misconstrued the statute in question, we vacate the injunction.[1]

David Allen is the sole owner and operator of American Dry Cleaners and Laundry, Inc., in Charlotte, North Carolina. He has operated this business from its present location on East Morehead St. for the past 13 years. He does not own the building in which his business is located but has leased the site during his entire occupancy of the building.

As early as 1978, Allen was informed by the government through a relocation agent that condemnation of the building his business occupied was being contemplated in connection with the completion of the I–277 highway project. The relocation agent discussed with Allen the nature of his business and what Allen considered necessary in a relocation site. Allen noted that he needed approximately 10,000–12,000 square feet of space, adequate parking and a site in a high traffic area.

After being formally advised of the condemnation, Allen began searching for a relocation site for his dry cleaning business. He also unsuccessfully sought to purchase several operating dry cleaning businesses in Charlotte. Everyone agrees that Allen has made a good faith effort to find a relocation site. He even employed a realtor to assist him in his search. Through that realtor, Allen eventually found and purchased a building containing 5,000 square feet on North Graham St.[2] Although that building was too small for his entire business, Allen judged the North Graham location as the best of the options available to him.

The government's relocation agent also tried to find Allen a relocation site following condemnation. The agent supplied Allen with the names of many possible relocation sites in Charlotte. None of these sites were acceptable to Allen. Allen testified that no location in Charlotte was as good as the one he had on East Morehead. He found the relocation agent to be helpful and was not dissatisfied with the assistance supplied by that agent.

The relocation agent agreed with Allen that his present business location on More-

---

1. We disagree with the government's contention that Allen has failed to exhaust his administrative remedies. The Act provides for such review when a person is aggrieved as to a determination as to his eligibility for payment or the amount of payment due him under the Act. 42 U.S.C. § 4633. Allen is not contesting any payment which may be due to him under the Act; instead, he contests the assistance (as contrasted to money) he received from the government.

2. Allen paid his realtor $10,000 as a result of that purchase.

head Street was the best location in the city. The agent testified that he supplied Allen with every relocation site that he could find and that he did not know what else he could do to assist Allen. Allen admits that he knows of no suitable relocation site that the relocation agent did not tell him about.

Thus, three years of searching for a relocation site by Allen, his realtor, and the relocation agent proved unsuccessful. No relocation site acceptable to Allen was found. On January 27, 1983, Allen was notified that he must vacate the building by April 15, 1983 or forfeit the bond he had previously posted. Allen then initiated this action in March 1983 to enjoin the government from evicting him from the Morehead Street location because it had not provided him with the assistance required by the Act.

After a hearing on the matter, the district court granted a temporary injunction, concluding that the government had not complied with the Act by providing the required relocation assistance to Allen. The district court found as a fact that Allen had made substantial efforts to relocate and that those efforts were unsuccessful. It found that the relocation agent had given Allen the names and locations of many possible relocation sites. It also found that the one site Allen had acquired (on North Graham Street) had not proven to be a feasible one.

The court recited that the applicable portion of the Act, 42 U.S.C. § 4625(c)(4), provides that the government's relocation assistance advisory program must "assist a displaced person displaced from his business or farm operation in obtaining and becoming established in a suitable relocation." It found that the government had not complied with that portion of the Act, and the gist of the holding was expressed as follows:

> "Plaintiff has not received the relocation assistance to which the law entitles it; no suitable replacement location has been obtained nor tendered."

Thereupon, it ordered that Allen be allowed to continue to occupy the Morehead Street location; that the parties continue to seek ways to resolve their differences; and that they bring to that court's attention any facts justifying a change in the order granting the temporary injunction.

On appeal the government contends that the district court misconstrued the statute by requiring the government to obtain or tender a relocation site for Allen instead of merely assisting Allen in his efforts to obtain a suitable replacement site. We agree.

The Uniform Relocation Assistance and Land Acquisition Policies Act of 1970, 42 U.S.C. § 4601, et seq., was passed to provide a uniform policy for the fair and equitable treatment of persons displaced by federally funded or assisted programs. § 4621 specifically so provides, and is entirely consistent with House Report 91–1656 found at 1970 U.S.Code Cong. and Adm.News, p. 5850, esp. pp. 5861–5863. Displaced persons are defined in § 4601 to include both individuals and businesses. Individuals displaced, however, receive greater protection under the Act than do businesses. Compare 42 U.S.C. §§ 4623, 4624, 4625 and 4626.

Under the Act, businesses are entitled to two types of aid, financial and relocation assistance advisory services. 42 U.S.C. §§ 4622, 4625. Under § 4622, businesses are entitled to recover for actual moving expenses, loss of tangible personal property and actual expenses in searching for a replacement business. Generally, if a business determines that it cannot relocate without a substantial loss of patronage, it can seek a payment in lieu of actual moving expenses, not to exceed $10,000. § 4622(c).

Allen does not contest the financial assistance that he has received or will receive because of his displacement. He challenges only the relocation assistance the government has provided. Under the Act, a business is entitled to relocation assistance services in order to "*assist* a displaced person displaced from his business . . . in obtaining and becoming established in a suitable replacement location." 42 U.S.C. § 4625(c)(4). (Emphasis added) The district court construed "assist . . . in obtaining . . . a suitable replacement location" to

mean that the government must "obtain" or "tender" a replacement location. We think that interpretation to be incorrect.

The Act requires that the government "assist," § 4625(c)(4), in finding another location for a displaced business, not that it tender or obtain a replacement location. Even Allen testified that he was satisfied with the advisory assistance he received. We are of opinion the Act requires only assistance, not assistance guaranteeing a successful result. Our opinion in this respect is supported by the Legislative History, above referred to, which describes the program and its functions variously as "a relocation assistance advisory program," p. 5861; as providing "current and continuing information as to the availability . . . of comparable commercial properties," p. 5862; and as providing "other advisory services," p. 5862. The catchline for § 4625 is "Relocation assistance advisory services." Subsection 4625(c) further describes the programs required as "relocation assistance advisory" programs, and subsections (c)(2) and (6), as does the Legislative History, make provision for providing "current and continuing information on the availability . . . of comparable commercial properties," (c)(2), and "other advisory services," (c)(6). Thus, the statute and the Legislative History are quite consistent and nowhere speak of obtaining or tendering replacement business sites, only of advising displaced businesses of the availability of such sites as well as other advisory services.

In like vein are the regulations of the Federal Highway Administration giving effect to the Act, 23 CFR Part 740. Those regulations most applicable here are found in Subpart B of §§ 740.33, et seq. The catchline for § 740.33 is "Relocation assistance advisory services," the same catchline used for § 4625 of the Code. The regulations in § 740.33(c)(1) provide that the "State relocation assistance advisory services program shall include such measures, facilities or practices as may be necessary or appropriate" to provide current information on a continuous basis regarding the availability of comparable commercial properties, as well as providing other advisory services.

23 CFR § 740.33(c)(1)(iii) and (vii). The regulations of the administrative agency administering the statute are thus consistent with the statute itself as well as the Legislative History and should be given weight in construing the statute, *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). We especially note that there is not even an allegation that the government has not lived up to the regulations provided for the administration of the statute, much less was any proof offered to that effect. As we have indicated before, the contrary is true.

We have found no published cases construing the language of § 4625(c)(4). We have reviewed the cases relied upon by Allen, *Crockin v. Portsmouth Redevelopment Authority*, 437 F.2d 784 (4th Cir.1971), and *Home Furniture Co. v. HUD*, 324 F.Supp. 1401 (W.D.N.C.1971), both construing the Housing Act of 1949, 42 U.S.C. § 1455(c)(1), and do not find them to be persuasive here.

In *Crockin*, a part of petitioner's business location had been acquired in a redevelopment project. The Redevelopment Authority, by agreement with Crockin, had subdivided a part of the property taken adjacent to Crockin's business to include one adjacent parcel suitable for Crockin's relocation of that part of his business displaced by the project. The Authority then proposed to sell that parcel to someone else. The court found that the Authority had orally promised Crockin that he could acquire the adjacent parcel. In return for such a promise, Crockin had relinquished his claim to some of the severance damages he was entitled to receive. Following the refusal of the Authority to convey the parcel to Crockin, Crockin attacked the plan and apparently sought to enforce the oral promise of the Authority. The court held that Crockin should have an opportunity to prove that the Authority had failed to comply with both the regulations issued under the statute and with the plan devised to discharge the statutory relocation obligation. It held that the legality of the relocation program should be determined in the light of Crockin's allegations that the only feasible as-

sistance would be to make the parcel in question available to Crockin, as well as other factors. The court stated that the Authority was required to provide effective relocation assistance. But the *Crockin* case obviously does not control here. First, no attack is made in our case on the regulations prescribed by the statute or on the plan devised to discharge the statutory obligation. The quality of the services rendered by the government to Allen is not criticized except for the government's failure to tender or obtain a replacement location. In the *Crockin* case, the Authority owned the replacement location and had the ability to convey the replacement location to Crockin. Here, the government does not own a replacement location and therefore has nothing to convey.

In *Home Furniture Company,* the court enjoined dispossessing the business involved pending the development of an effective relocation assistance program, p. 1404, apparently for the reason that there were "not enough sites in central Charlotte to which the various businesses involved in this project could be moved." p. 1403. If the holding of the court was that the relocation assistance program was ineffective because there were not enough sites in central Charlotte to go around, then we simply disagree with that holding as applied to this case. Without attempting an analysis of the Housing Act, the statute under consideration here 42 U.S.C. § 4625, has no such requirement; neither do we construe it so to have. If the holding of the court was that no effective relocation assistance program had been developed for other unstated reasons, then the case may not be necessarily inconsistent with our decision here. In any event, as *Home Furniture Company* may be read to be inconsistent with our decision in this case, it is no longer persuasive authority in this circuit.

Because we are of opinion that the district court misconstrued the statute in question, and because there has been no showing that the government did not comply with the statute, the order of the district court appealed from is

VACATED.