John W. SPENCE, Father and Next Friend of John W. Spence, Jr., Plaintiff-Appellee

v.

Edgar H. BAILEY et al., Defendants-Appellants.

No. 71–1667.

United States Court of Appeals, Sixth Circuit.

Aug. 8, 1972.

Ernest G. Kelly, Jr., Evans, Petree, Cobb & Edwards, Memphis, Tenn., for defendants-appellants.

David E. Caywood, Dobbs, Gatti & Caywood, Memphis, Tenn., for plaintiff-appellee.

Before TOM C. CLARK, Associate Justice,* and McCREE and MILLER, Circuit Judges.

Mr. Justice CLARK:

This is an appeal from a declaratory judgment entered under the provisions of 42 U.S.C. § 1983 and finding that the religious beliefs of John Spence Jr., a conscientious objector attending the Memphis City Schools as a student, had been infringed by a requirement that he participate in the Reserve Officers Training Corps program at the schools. The District Court, 325 F.Supp. 601, found that the compulsory program was contrary to the religious beliefs of Spence Jr. as "a conscientious objector" and that the school authorities had failed to show any compelling state interest in requiring his participation in the program. We affirm.

1. At the time Spence Jr. entered the 11th Grade at Central High School in Memphis the state law required that every school student take one year either of physical education or of R.O.T.C. training. No physical education course was offered at Central for male students leaving R.O.T.C. as the only alternative. Nor was any program offered consisting only of those portions of the R.O.T.C. course that were not objectionable to conscientious objectors.

R.O.T.C. was taught by retired U. S. Army officers and the books, manuals and other materials used in the course were prepared by the United States Army. The routine included a study of these materials together with military drills, marksmanship and firearms instruction and military tactics, with the students wearing military uniforms once each week.

There being no physical education course for boys, Spence Jr. attended R. O.T.C. class for the first three days he was enrolled at Central High. Thereafter he refused to attend the R.O.T.C. class, and his father, the appellee here, petitioned the school authorities to exempt Spence Jr. from attending on account of the latter's conscientious objections.[1] The request was denied and upon Spence Jr. refusing to attend, the school authorities notified him that he would not be awarded his diploma even though he passed all other requirements. Upon his graduation he was not awarded a diploma; however, he was able to enroll in and is now attending college despite this handicap.

2. Appellants do not challenge the sincerity or religious motives of Spence Jr. but contend that the compulsory program is a secular one with, at most, incidental and indirect impact on Spence Jr.'s religious beliefs. They also suggest that he could have avoided R.O. T.C. by attending the Memphis Technical School which does provide courses in physical education. But the record shows that this school is far removed from Spence Jr.'s home; its curriculum does not include the necessary liberal art courses preparatory to college and would not meet Spence Jr.'s requirements. We therefore reject these alternatives.

Appellants cite as support for their position Hamilton v. Regents, 293

---

* Associate Justice of the Supreme Court of the United States, Retired, sitting by designation.

1. Spence Jr.'s religious beliefs and the resulting conflict were stated by him in these words:
"By reason of religious training and belief, I am conscientiously opposed to participation in war in any form and am opposed to being subjected to combat training for the purpose of being prepared to enter into war. As stated above, my convictions are based upon religious training and belief which is in turn based upon a power or being or upon a faith to which all else is subordinate and upon which all else is ultimately dependent. This sincere and meaningful belief occupies in my life a place parallel to that filled by the Supreme Being, God . . . ."

U.S. 245, 55 S.Ct. 197, 79 L.Ed. 343 (1934) approving an R.O.T.C. program in a state land grant college and Braunfeld v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961) upholding a criminal conviction under state blue laws. In *Hamilton* the Court specifically found that the University program served the compelling State interest in military training while Appellants concede here that their military training course had no such compelling State interest.[2] Indeed since Tennessee has made the R.O.T.C. training course optional with physical education, it would be difficult to conclude that the R.O.T.C. program was vital to the State's welfare.

■ Moreover, other factual differences are present. The enrollment at California's University in *Hamilton* was voluntary while attendance here is required by law. As Mr. Justice Butler noted in *Hamilton,* "California has not drafted or called them to attend the University. They are seeking education offered by the state and at the same time insisting that they be excluded from the prescribed course. . ." The Court concluded that due process did not confer "the right to be students in the state university free from obligation to take military training as one of the conditions of attendance." At 262, 55 S.Ct. at 204. The distinction here is crucial. See West Virginia State Board of Education v. Barnette, 319 U.S. 624, 631–632, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); School District of Abington Township, Pa. v. Schempp, 374 U.S. 203, 250–253, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (Brennan, J., concurring). Furthermore the school system here conducts a physical education course for female students at all schools while only Technical High provides it for male students. Indeed, the record shows that physical education for Spence Jr. could have been offered at Central High School since facilities were available less than a hundred yards from the main building. Instead the authorities required Spence Jr. to engage in R.O.T.C. training or go to Technical High. If the appellants had utilized the physical education facilities available, the State would have accomplished its purpose by means which would not have imposed such a heavy burden on Spence Jr.'s free exercise of his religion. As was said in *Braunfeld, supra,* if "the State may accomplish its purpose by means which do not impose such a burden" it must do so. At 607 of 366 U. S., at 1148 of 81 S.Ct.

*Braunfeld* is one of the Court's recent opinions which have carefully confined the scope of State regulations that may impinge on religious beliefs and practices. We believe that appellants' reliance on its is also misplaced. There the State imposed no penalties upon the religious practitioner, but merely proscribed the purely secular activity of work on Sunday. In Sherbert v. Verner, 374 U. S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), however, the Court struck down an unemployment compensation scheme that tended to penalize those who observed Saturday as a religious holiday. The distinction is clear: the regulation in *Braunfeld* was upheld because it in no way compelled activity that was contrary to religious beliefs and denied no important State benefits to any religious practitioner. The regulation in *Sherbert* was invalidated because it forced the religious practitioner either to act contrary to his religion (by accepting employment on Saturday) or to be denied important State benefits (unemployment compensation). See Sherbert v. Verner, *supra* at 402–403, 83 S.Ct. 1790. The regulation here involved is clearly similar to that in *Sherbert,* since it compels the conscientious objector either to engage in military training contrary to his religious beliefs, or to give up his public education.

2. Appellants do say that they have a compelling interest in refusing all applications for exemptions from the R.O.T.C. compulsory rule, otherwise the burden of its administration would be intolerable. Moreover, they argue that a flood of fraudulent conscientious objectors' claims will result if Spence Jr.'s application is allowed. However, similar contentions have been made and rejected heretofore. See Sherbert v. Verner, 374 U.S. 398, 407, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

As Mr. Chief Justice Burger said only recently in upholding Amish religious claims in Wisconsin v. Yoder, 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972), "only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion." At 1533. In evaluating rights to the free exercise of religious beliefs, he continued, "we must be careful to determine whether the . . . religious faith" and mode of life of the person are "inseparable and interdependent;" otherwise the faith "may not be interposed as a barrier to reasonable state regulation" if the way of life "is based on purely secular considerations; to have the protection of the Religion Clauses, the claims must be rooted in religious belief." At 215, 92 S.Ct. at 1533.

3. Here the impact on Spence Jr.'s religious beliefs cannot be minimized. As we have indicated the state does not challenge that Spence Jr.'s claims are rooted in deep religious conviction based, as he says, upon "religious training and belief . . . upon a faith to which all else is subordinate and upon which all else is ultimately dependent." As Wisconsin's law requiring compulsory formal education after the 8th grade "would gravely endanger if not destroy the free exercise of . . . religious beliefs," Id. at p. 219, 92 S.Ct. at p. 1535, of Yoder, so would Tennessee's law transgress upon Spence Jr.'s.

As the trial judge aptly observed, "the R.O.T.C. course requirement forced John to choose between following his religious beliefs and forfeiting his diploma, on the one hand, and abandoning his religious beliefs and receiving his diploma on the other hand." The State may not put its citizens to such a Hobson's choice consistent with the Constitution without showing a "compelling state interest . . . within the State's constitutional power to regulate . . ." NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 341, 9 L.Ed.2d 405 (1963).

Affirmed.

WILLIAM E. MILLER, Circuit Judge (dissenting).

Because of my high regard for the author of the majority opinion in this case, whose illustrious career includes many years service on the highest court in the land, and because of my respect for the opinions of my colleague, Judge McCree, I personally regret that I must note my dissent.

The record clearly indicates that the required R.O.T.C. course at Central High School was prescribed by the duly constituted authorities in lieu of a course in physical education. In addition to the military aspects of the course, it has many other features which the authorities were justified in considering as important training for a student at the high school level, including training in leadership, discipline, hygiene, and other elements. The court in no way committed a student to military service and placed no impediment in his way in the event he should in the future seek to obtain the status of a conscientious objector pursuant to federal statute. Under these circumstances, I find compelling the language of Mr. Justice Cardozo in his concurring opinion in Hamilton v. Regents, 293 U.S. 245, 55 S.Ct. 197, 79 L.Ed. 343 (1934):

There is no occasion at this time to mark the limits of governmental power in the exaction of military service when the nation is at peace. The petitioners have not been required to bear arms for any hostile purpose, offensive or defensive, either now or in the future. They have not even been required in any absolute or peremptory way to join in courses of instruction that will fit them to bear arms. If they elect to resort to an institution for higher education maintained with the state's moneys, then and only then they are commanded to follow courses of instruction believed by the state to be vital to its welfare. This may be condemned by some as unwise or illiberal or unfair when there is violence to conscientious scruples, either religious or merely ethical. More must

be shown to set the ordinance at naught. In controversies of this order courts do not concern themselves with matters of legislative policy, unrelated to privileges or liberties secured by the organic law. The First Amendment, if it be read into the Fourteenth, makes invalid any state law "respecting an establishment of religion or prohibiting the free exercise thereof." *Instruction in military science is not instruction in the practice or tenets of a religion. Neither directly nor indirectly is government establishing a state religion when it insists upon such training. Instruction in military science, unaccompanied here by any pledge of military service, is not an interference by the state with the free exercise of religion when the liberties of the constitution are read in the light of a century and a half of history during days of peace and war.* At 265 and 266, 55 S.Ct. at 205 (Emphasis added).

The attempt to distinguish *Hamilton* on the basis that the attendance at the college level in that case was on a voluntary basis, while here attendance was compulsory under Tennessee law, appears to me to be unpersuasive. As I view the record in this case, the R.O.T.C. program did not infringe upon the student's constitutional right of free exercise of religion. As Mr. Justice Cardozo further said in his *Hamilton* concurrence:

Manifestly a different doctrine would carry us to lengths that have never yet been dreamed of. The conscientious objector, if his liberties were to be thus extended, might refuse to contribute taxes in furtherance of a war, whether for attack or for defense, or in furtherance of any other end condemned by his conscience as irreligious or immoral. The right of private judgment has never yet been so exalted above the powers and the compulsion of the agencies of government. One who is a martyr to a principle—which may turn out in the end to be a delusion or an error—does not prove by his martyrdom that he has kept within the law. · At 268, 55 S.Ct. at 206.[1]

I see no reason why a conscientious objector, if his liberties are to be so extended, could not with equal plausibility refuse to subject himself to any course which involved the study of military history—for example, a study of the Napoleonic or Punic wars and others of similar character.

I wish to make it clear that my disagreement with the majority in this case is not based upon the notion that there is a compelling state interest. In my opinion there is no objective evidence to support a finding that the required R.O.T.C. program at Central High School in any way impinged upon the student's constitutional right of free exercise of religion. The mere statement in Spence's affidavit that the program did violate his religious faith is based entirely upon a subjective judgment.

As clearly indicated by the decision of the Supreme Court in Wisconsin v. Yoder, et al., 406 U.S. 205, 92 S.Ct. 1526, 1533, 32 L.Ed. 15 (1972), mere subjective evaluation is not enough to establish a religious belief or conviction for First Amendment purposes:

. . . A way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation of education if it is based on purely secular considerations; to have the protection of the Religion Clauses, the claims must be rooted in religious belief. Although a determination of what is a "religious" belief or practice entitled to constitutional protection may present a most delicate question, the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests.

---

1. It is to be noted that Mr. Justice Brandeis and Mr. Justice Stone joined in the Cardozo concurrence in *Hamilton.*

Thus, if the Amish asserted their claims because of their subjective evaluation and rejection of the contemporary secular values accepted by the majority, much as Thoreau rejected the social values of his time and isolated himself at Walden Pond, their claim would not rest on a religious basis. Thoreau's choice was philosophical and personal rather than religious, and such belief does not rise to the demands of the Religion Clause. At 92 S.Ct. at 1533.

The Court was able to find in *Yoder* a violation of the Religion Clause in Wisconsin's compulsory school attendance law as applied to members of the Amish faith because, as the Court said, "The record in this case abundantly supports the claim that the traditional way of life of the Amish is not merely a matter of personal preference, but one of deeply religious conviction shared by an organized group, and intimately related to daily living." At 92 S.Ct. at 1533. In the case before us there is no comparable showing.

I would therefore reverse the judgment of the District Court.