Tim SAPP, a minor, by his next friend and father, Jack Sapp, for themselves and for all others similarly situated, Plaintiff,

v.

Dr. Carl G. RENFROE, Individually and in his capacity as Superintendent of the Decatur City Board of Education, et al., Defendants.

Civ. A. No. 17181.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 20, 1974.

Elizabeth R. Rindskopf, Moore, Alexander & Rindskopf, Atlanta, Ga., for plaintiff.

William Zachary, Zachary & Segraves, Decatur, Ga., for defendants.

## ORDER

MOYE, District Judge.

This civil rights action challenges the constitutionality of the Decatur, Georgia, Board of Education mandatory requirement that all male students successfully complete a course of military instruction commonly referred to as Reserve Officer's Training Corps [hereinafter ROTC] during their tenth grade year of school and as a prerequisite for graduation. Plaintiff seeks injunctive and declaratory relief pursuant to 42 U. S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202 for alleged violations of his rights guaranteed under the First and Fourteenth Amendments to the United States Constitution and this Court therefore has jurisdiction under 28 U.S.C. § 1343(3) and (4). The defendants are the Superintendent of the Decatur City School System and the chairman and members of the Decatur Board of Education. Although originally filed as a class action, no proof of class membership has been offered by plaintiff and, accordingly, this action is determined to not be maintainable as a class action.

For at least the last 25 years, the Decatur Board of Education has required ROTC for all tenth grade male students. The only exceptions to this mandatory requirement are for students who are physically disabled or who have had previous training in band or choral singing and desire to continue their studies in these areas without interruption. The Decatur Board of Education has no exception for students who object to ROTC on religious grounds.

The ROTC requirement at Decatur High is in addition to the requirements

established by the Georgia State Board of Education. Decatur's ROTC course is federally financed in significant part and is taught by retired United States Army personnel with supplies and equipment furnished by the United States Army. The content and structure of the ROTC course is established and supervised by the United States Army and consists of training in history of military science, firearm safety and marksmanship, military organization, leadership, and hygiene and first aid.[1]

At the beginning of Sapp's tenth grade year of school at Decatur High, he refused to enroll or participate in ROTC. As a result of his orderly refusal he was initially suspended from school but was subsequently allowed to attend classes pending a review of the ROTC requirement by the Decatur Board of Education. On September 22, 1972, the Decatur Board of Education met and decided to adhere to the mandatory ROTC requirement with exceptions only for the physically disabled or those participating in band or choral singing. The Board made no inquiry into the sincerity of Sapp's objections. As a result of the Board's decision to maintain the mandatory ROTC requirement, Sapp was denied admittance to Decatur High and consequently has continued his education as a tuition paying student at DeKalb Area Technical School.[2] Sapp will not be allowed to return to Decatur High School to complete his eleventh and twelfth grade years and graduate unless he completes the ROTC course. Sapp will, however, be able to obtain a diploma from DeKalb Area Technical School.

On May 15, 1973, this matter was tried before the Court sitting without a jury and the following individuals testified: Tim Sapp; Dr. Carl Renfroe, Su-perintendent of the Decatur School System; and Lt. Col. J. S. Steward, the ROTC instructor at Decatur High School. From the testimony at trial and the documents in the file, the Court has ascertained that the Decatur High School ROTC course offers many features other than military training such as training in leadership, personal hygiene, discipline, and first aid which justified educational officials' decision that the course offered important training for a high school student. It is also clear that the high school ROTC course in no way commits a student to military service, and participation therein will not impair his future ability to obtain status as a conscientious objector.

The Court notes with interest the Sixth Circuit Court of Appeals opinion in Spence v. Bailey, 465 F.2d 797 (6th Cir. 1972), which held a high school's mandatory ROTC requirement violative of the First Amendment guarantee of freedom of religion. In *Spence*, the plaintiff's objection to ROTC clearly paraphrased the Supreme Court's opinion in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), which enunciated the "parallelism test" for conscientious objector status under the Selective Service Act. Spence stated his objection to ROTC as follows:

"By reason of religious training and belief, I am conscientiously opposed to participation in war in any form and am opposed to being subjected to combat training for the purpose of being prepared to enter into war. As stated above, my convictions are based upon religious training and belief which is in turn based upon a power or being or upon a faith to which all else is subordinate and upon which all else is ultimately dependent.

1. The Decatur High School Curriculum Guide describes basic ROTC as including instruction in military courtesy and customs of the service, rules of conduct, patriotism and personal honor, courtesy and discipline and habits of posture, and the basic fundamental of first aid and personal hygiene.

2. Decatur High School is the only public high school in the area which Sapp can attend without paying tuition.

This sincere and meaningful belief occupies in my life a place parallel to that filled by the Supreme Being, God. . . ." [465 F.2d at 798]

It is clear from Spence's above-quoted objection to ROTC, that his objection was based on religious training and his convictions were of a religious nature.

From the testimony of Tim Sapp, which is reprinted in the margin,[3] the Court finds that his objection and refusal to participate in ROTC is based on sincerely held personal beliefs which are not the result of any formal religious training. Sapp testified that his beliefs were personal beliefs merely akin to those of a religious nature. Sapp further testified that his specific objection to ROTC was that he considered it to be a preparation and training for killing which was repugnant to his personal belief.

---

3. Tim Sapp's testimony during the trial before the Court on May 15, 1973, was as follows:

Q. When you use the word "believe" what do you mean, what kind of belief were you talking about?
A. It is a belief that is important, that's important to me as another religion is to somebody else.
Q. Would you say its like a religious belief to you?
A. Yes.

\*       \*       \*       \*       \*

Q. Is this belief based on your prior religious training?
A. I can't honestly say for sure because it was—I can't remember that much about it.
Q. You did receive some prior religious training?
A. Yes, Ma'am.
Q. Are you familiar with people who have religious beliefs?
A. Yes, Ma'am.
Q. How would you compare your belief to that?
MR. ZACHARY: I believe that is going a long way, I object to that?
THE COURT: Overruled.
A. I would like to say that like I said, it is just important. What I believe is just important to me as their religion is to them.
Q. How did you arrive at this belief if you didn't gain it through some teaching of a religious nature, an organized church?
A. Well, when, like, I was in elementary school, the sixth grade teacher, she showed films of traffic accidents, which showed what it was like after death to the family, like what the family had to go through, all the suffering that there was and then the thought of death and like that.

\*       \*       \*       \*       \*

Q. All right, now, during any of these conversations either with Sargeant Benson, with Mr. Prosser, Mr. Daniels, Doctor Renfroe or Lieutenant Stuart, did you have a chance to explain what you meant by saying that you didn't believe in ROTC?
A. No, Ma'am.
Q. Were any questions asked to you as to what you meant?
A. No, Ma'am.
Q. Do you recall being asked any questions about your beliefs at the School Board meeting that you heard your father testify about?
A. They just asked me to say something. And I told them that I didn't believe in ROTC because I didn't believe in killing.

In a deposition taken October 18, 1972, Tim Sapp testified:

BY MR. ZACHARY:
Q. All right. I take it from us being here that you object to taking ROTC?
A. Yes, sir.
Q. Does this come from a religious objection?
A. No, sir.
Q. It does not come from a religious objection?
A. No, sir.
Q. If it does not come from a religious objection, what's your objection stem from?
A. The moral code, where it's just like I say to myself when I get my license I'm not going to drive fast, so I can say to myself I'm not going to kill anyone.
Q. To your knowledge, does the ROTC require—does ROTC training require someone to kill someone; in other words, are people killed in ROTC?
A. Well, I don't understand the question, really.
Q. All right. You say you would not kill anyone. To your knowledge, are people killed in ROTC, is that to your knowledge the purpose of ROTC, killing people?
A. Well, you see, I look at it as ROTC being one step over the Army, and the ROTC they teach you to shoot a gun so they're teaching you for the Army and that's, you know, like one thing, you know, they're teaching you to kill. Well, they're teaching you to shoot a gun so you can go in the Army and kill.

Sapp's personal beliefs, which might in the future support a finding that he should be entitled to statutory conscientious objector status for military service, do not establish a religious belief or conviction for First Amendment purposes. In Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the Supreme Court noted that personal philosophies and subjective evaluations do not establish a religious belief or conviction for First Amendment purposes:

> ". . . A way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation of education if it is based on purely secular considerations; to have the protection of the Religion Clauses, the claims must be rooted in religious belief. Although a determination of what is a 'religious' belief or practice entitled to constitutional protection may present a most delicate question, the very concept or ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests. Thus, if the Amish asserted their claims because of their subjective evaluation and rejection of the contemporary secular values accepted by the majority, much as Thoreau rejected the social values of his time and isolated himself at Walden Pond, their claims would not rest on a religious basis. Thoreau's choice was philosophical and personal rather than religious, and such belief does not rise to the demands of the Religion Clauses." [406 U.S. at 215–216, 92 S.Ct. at 1533]

Because Tim Sapp's objections to ROTC are based on a personal belief of repugnance to killing, and not a religious belief, the Court finds there is no objective evidence to support a finding that the Decatur High School's ROTC requirement impinged on his constitutional right to free exercise of his religion. Accordingly, the Court rules for the defendants.

Although not necessary to this decision, the Court notes that the record does not support a finding that Decatur High School's compulsory ROTC program is required by a compelling state interest but that the program serves a valid educational purpose and bears a rational connection to the fulfillment of the state school system's position of parens patriae by teaching students discipline, leadership, personal hygiene and first aid. The additional topics of military sciences, military organization, firearms safety and marksmanship also serve valid educational goals and do not violate Sapp's First Amendment freedom.