Tim SAPP, a minor, by his next friend and father, Jack Sapp, for themselves and for all others similarly situated, Plaintiffs-Appellants,

v.

Dr. Carl G. RENFROE, Individually and in his capacity as Superintendent of the Decatur City Board of Education, et al., etc., Defendants-Appellees.

No. 74–2418.

United States Court of Appeals,
Fifth Circuit.

April 11, 1975.

Elizabeth R. Rindskopf, John R. Myer, Howard Moore, Jr., Atlanta, Ga., for plaintiffs-appellants.

William E. Zachary, Jr., Decatur, Ga., for defendants-appellees.

Before THORNBERRY, COLEMAN and ROSENN,* Circuit Judges.

ROSENN, Circuit Judge:

For at least the last twenty-five years, the Decatur City Board of Education (Board)[1] has required all male students to complete successfully a course of military instruction, known as the Reserve Officers' Training Corps (ROTC), as a necessary condition for completion of the tenth grade and for graduation from Decatur High School. The State Board of Education, which has established certain minimum requirements for graduation from public high schools in Georgia, does not require ROTC as a course of study. The City Board has added the ROTC requirement because of its belief that the course "serves a valid educational purpose of teaching military science, leadership training, military organization, hygiene, first aid, firearms, safety and marksmanship." The only male students excused from ROTC are those who are physically disabled or those who previously have participated in the band or chorus and who desire to continue these studies without interruption.

ROTC meets each school day for the tenth grade school year. It is taught by retired commissioned officers of the United States Armed Forces, whose salaries are paid in part by the Board and in part by the Secretary of the Army under the Reserve Officers' Training Corps Vitalization Act of 1964, 10 U.S.C. § 2031. The outline and substance of material presented in the course is prepared, supervised, and reviewed periodically by the Secretary of the Army or his representative. No significant variation from this material is permitted. All textual material, equipment, and uniforms employed in the course are supplied by the Department of the Army. Students use weapons supplied by the Army in their marksmanship training and must wear uniforms for all classes.

When appellant, Tim Sapp, enrolled in the tenth grade at Decatur High School in August 1972, he already was familiar with the ROTC program and some of its teaching materials, his older brother Kim previously having completed the course. Tim, unlike Kim, adamantly was opposed to receiving military instruction and refused to participate in ROTC from the beginning of the school year. At first, the Board refused Sapp the opportunity to matriculate, but subsequently allowed him to attend classes pending a review of the ROTC requirement. At its September 12, 1972 hearing, the Board refused to amend the requirement and denied Sapp admittance to the Decatur High School.

Sapp instituted an action in the United States District Court for the Northern District of Georgia on September 21, 1972, claiming that his exclusion from school for failure to attend ROTC violated his freedoms of religion and speech. After a hearing the next day, the district court denied Sapp's motion for a temporary restraining order requiring that he be allowed to attend classes at Decatur High School pending resolution of the dispute. Since Decatur was the only school in the area which Sapp could attend without cost, he was forced to enroll as a tuition-paying student at the

---

* Of the Third Circuit, sitting by designation.

1. Dr. Carl G. Renfroe is the Superintendent, and the other appellees are members, of the City Board of Education.

Dekalb Area Technical School, from which he graduated on January 23, 1974.

After a nonjury trial, the district court rejected Sapp's claims, holding that since Sapp's objections to participation in ROTC were based on personal rather than religious beliefs, his exclusion from school could not violate his freedom of religion. The court did not discuss Sapp's claim that the ROTC requirement violated his freedom of speech. Since we find Sapp's demand for compensatory damages, the only demand which has not been rendered moot by his graduation, to be barred by the qualified immunity of the Board, we affirm the judgment of the district court.[2]

Sapp's complaint in the district court demanded declaratory and injunctive relief, attorneys' fees, and "such other and further relief as is just and proper under the circumstances." The Board contends that Sapp's graduation from Dekalb has rendered the controversy and the various demands for relief moot. Sapp concedes the mootness of his demand for injunctive relief, but argues that he is still entitled to declaratory relief, attorneys' fees, and any damages he may have incurred as a result of his exclusion from Decatur.

We believe Sapp's demand for declaratory relief is indistinguishable from the demand in Board of School Commissioners v. Jacobs, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975), in which students had sued to declare unconstitutional the school board's regulation of the publication and distribution of a student newspaper. The Court held that the graduation of all the plaintiffs from the school system terminated the existence of a live controversy between the parties, mooting the demand for declaratory relief unless the case was certified as a class action. Here, although Sapp sued as representative of a class, the district court found that no proof of class membership had been offered, and deter-

mined that a class action was not maintainable.

Sapp argues that the instant situation falls within the category of cases "presenting an issue 'capable of repetition, yet evading review,'" which are not rendered moot by the termination of the dispute which gave rise to the controversy. Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 125, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). A comparison of McCorkle with DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974), in which the Court refused to find a McCorkle-type situation, illustrates certain of the factors necessary for the existence of the McCorkle exception.

In McCorkle, Super Tire, during a strike by its employees, challenged two New Jersey public welfare programs which provided benefits for striking workers. The Court held that the case was not moot, even though the strike against Super Tire had ended, because the New Jersey programs significantly affected the present interests of the company and its employees in their ongoing collective bargaining relationship, and because the duration of most strikes are not long enough to permit effective appellate review of legal issues raised by the strikes.

DeFunis involved a challenge to a law school's admission policy by a law student who had been admitted only under court order and who was about to graduate. The Court held that a situation "capable of repetition, yet evading review" was not present because the situation was not capable of repetition as to that particular law student, and because no reason existed to suppose that a subsequent case, presenting the same issues in the context of a live controversy, would not come before the Court for review.

In the instant case, the Board's ROTC policy does not affect Sapp's present in-

2. In a review of judicial proceedings, an appellate court must affirm a correct judgment of the district court even when that decision is based on an inappropriate ground or a wrong reason. Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937); PAAC v. Rizzo, 502 F.2d 306, 308 n. 1 (3d Cir. 1974).

terests. The issue presented, while capable of repetition, certainly will not recur as to Sapp. Moreover, the length of time necessary for graduation from high school, three or four years, should be more than sufficient for a case to wend its way through the courts, even in this age of congested court calendars. We note that this case reached us in less than two and one-half years, and we have no reason to suspect that the next case presenting these issues will be brought by one who will have graduated in less time. Under these circumstances, the need for a declaratory judgment no longer exists.

■ Different considerations affect the determination of whether any claim for compensatory damages is moot.[3] Sapp, as a result of his exclusion from the only high school in the area which he could attend without cost, was forced to enroll at Dekalb Area Technical School, and pay tuition at the rate of $22 per course. A claim for damages incurred as a result of tuition expenses is not rendered moot by Sapp's graduation.[4]

■ Although any demand by Sapp for compensatory damages is not moot, we believe the awarding of such damages is barred by the qualified immunity which the members of the Board enjoy. In Wood v. Strickland, —— U.S. ——, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), decided since this case was argued, the Court held that a school administrator or a school board member is immune from liability for compensatory damages in civil rights suits brought under 42 U.S.C. § 1983 unless:

he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the students affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student. . . . A compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights . . . . .

—— U.S. at ——, 95 S.Ct. at 1001. No circumstances exist indicating a "malicious intention" toward Sapp on the part of the Board members. While determining that a constitutional right is "clearly established," or is "basic" and "unquestioned," id., is likely to prove an onerous burden for the Board, see id. at ——, 95 S.Ct. 992 (Powell, J., concurring and dissenting), we believe that Sapp's freedom from attending ROTC was not a clearly established constitutional right.

Sapp refused to attend ROTC because he sincerely held conscientious objections to being taught how to kill. He contended in the district court that these objections were religious in nature, and that the state could not infringe on such beliefs absent a showing of compelling state interest. See Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

■ Sapp's claim that his beliefs were religious for purposes of the first amendment is not altogether clear. Sapp, in his complaint, alleged that his

---

**3.** Sapp's complaint did not contain a demand for money damages, except for such "further relief as is just and proper." Sapp, however, in response to the Board's motion to dismiss the appeal, has asserted in this court that he is entitled to such relief. Rule 54(c) of the Federal Rules of Civil Procedure has been construed liberally and under it the demand for relief in the pleadings does not limit, except in cases of default, the relief a court may grant when entering judgment. See Thorington v. Cash, 494 F.2d 582, 586 n. 9 (5th Cir. 1974). A party may be awarded the damages established by the pleadings or the facts prov-

en at trial even though only injunctive relief was demanded in the complaint, unless such damages are foisted upon the parties by the court, or unless the failure to demand such relief prejudiced the opposing party. Robinson v. Lorillard Corp., 444 F.2d 791, 802–03 (4th Cir. 1971); see J. Moore, Federal Practice ¶ 54.62 (2d ed. 1974).

**4.** Sapp's proof of damages distinguishes his demand for monetary relief from the demand in *Jacobs*, in which plaintiffs were unable to prove any damages at trial. —— U.S. at ——, 95 S.Ct. 848 n. 1.

refusal to attend ROTC was based on personal beliefs. The district court found that these beliefs "were personal beliefs merely akin to those of a religious nature." Such beliefs well may be considered religious under the parallelism test used to define religious belief for the purposes of. the conscientious objector provision of the Selective Service Act.[5]

In *Seeger* the Court held: The *Welsh-Seeger* parallelism test, however, is a

matter of statutory construction, and no authoritative cases decided prior to the Board's actions [6] holding that the test is one of constitutional significance have been brought to our attention.[7] We are aware of dicta in Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), that personal beliefs are not to be considered religious for the purposes of the first amendment.[8] Thus, it is not clear that Sapp's beliefs were. religious for the purposes of the first amendment.[9]

---

**5.** 50 U.S.C.App. § 456(j). *See* Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

> In *Seeger* the Court held:
>
> A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition [of religious belief].

380 U.S. at 176, 85 S.Ct. 859, this definition was expanded in *Welsh.*

> If an individual deeply and sincerely holds beliefs that are purely ethical or moral in source and content but that nevertheless impose upon him a duty of conscience to refrain from participating in any war at any time, those beliefs certainly occupy in the life of that individual "a place parallel to that filled by . . . God" in traditionally religious persons.

398 U.S. at 340, 90 S.Ct. at 1796.

**6.** We choose this date because the Board is not "charged with predicting the future course of constitutional law." Pierson v. Ray, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967), *quoted in* Wood v. Strickland, *supra,* —— U.S. at ——, 95 S.Ct. 992.

Sapp contends that this circuit has applied the parallelism test in a constitutional setting in Theriault v. Carlson, 495 F.2d 390 (5th Cir. 1974). It is unclear that we did so, but in any event we cannot hold the Board accountable for a case decided after its action.

**7.** We do not mean to imply that the test is not one of constitutional significance. *See* Welsh v. United States, *supra,* 398 U.S. at 344, 90 S.Ct. 1792 (Harlan, J., concurring). We simply mean that the constitutional significance of the test has not been determined authoritatively.

**8.** The Court stated:
> A way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation of education if it is based on purely secular considera-

tions; to have the protection of the Religion Clauses, the claims must be rooted in religious belief. Although a determination of what is a "religious" belief or practice entitled to constitutional protection may present a most delicate question, the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests. Thus, if the Amish asserted their claims because of their subjective evaluation and rejection of the contemporary secular values accepted by the majority,. much as Thoreau rejected the social values of his time and isolated himself at Walden Pond, their claim would not rest on a religious basis. Thoreau's choice was philosophical and personal rather than religious, and such belief does not rise to the demands of the Religion Clause.

Wisconsin v. Yoder, *supra,* 406 U.S. at 215–16, 92 S.Ct. at 1533.

**9.** This analysis assumes that the Board, in refusing to except Sapp from the ROTC requirement, knew the nature of Sapp's belief.

An examination of the record leaves us unclear as to whether any members of the Board inquired into the nature of Sapp's beliefs. Dr. Renfroe testified that a member of the Board twice asked Sapp whether "this was a matter of religious conscientious objection," and that Sapp responded negatively to the second question. Both Sapp and his father denied that such questioning occurred. In any event, the nature of Sapp's belief was made clear in the complaint and at the hearing on the motion for a temporary restraining order, of which, we may assume, the Board was kept informed. The filing of the complaint and the hearing occurred after the Board meeting, but prior to Sapp's enrollment at Dekalb. Since we are concerned only with Sapp's demand for damages, which were incurred as a result of the enrollment, the date of enrollment is the significant date in determining the Board's knowledge of the nature of Sapp's beliefs.

Similarly, Sapp refused to participate in ROTC because he objected to being taught how to kill. The Board has responded by noting that, although students are given marksmanship training, ROTC does not teach anyone to kill and that no student is obligated as part of the course to enlist in the Armed Forces. The Board's argument cannot be dismissed as totally unfounded. In Hamilton v. Board of Regents, 293 U.S. 245, 55 S.Ct. 197, 79 L.Ed. 343 (1934), the Court upheld mandatory ROTC at the University of California against the objections of religiously opposed students. Justice Cardozo, in an opinion joined by Justices Brandeis and Stone, concurred, writing:

> Instruction in military science, unaccompanied here by any pledge of military service, is not an interference by the state with the free exercise of religion . . . . For one opposed to force, the affront to conscience must be greater in furnishing men and money wherewith to wage a pending contest than in studying military science without the duty or pledge of service.

*Id.* at 266–67, 55 S.Ct. at 206.[10] The Board, therefore, constitutionally might not have had to exempt Sapp from the ROTC requirements even if his objections were religiously based.

Sapp also defended his refusal to attend ROTC on the ground that compulsory attendance violated his freedom of expression, relying on Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), and West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). In *Tinker,* the Court held that a school could not prohibit the wearing of black arm bands as an expression of protest against the Vietnam war. *Tinker* would have to be extended greatly to reach the situation here, since no indication exists that Sapp wished to make any communication by refusing to attend

ROTC. In *Barnette,* the Court held that a state could not mandate that school children pledge allegiance to the flag, since the pledge was a forced affirmation of belief. We are not aware of a decision of the Supreme Court or of this circuit interpreting *Barnette* to mean that a student, as a matter of his freedom of speech, has a constitutional right not to attend a course with which he disagrees.

■ In noting these difficulties with Sapp's contentions, we are not to be read as holding that Sapp ultimately would not have been successful had we reached the merits of his claims. Indeed, in the only reported case deciding the issue before us, the Court of Appeals for the Sixth Circuit has held that a school board constitutionally could not require a student objecting on religious grounds to complete successfully a course im military instruction as a condition of graduation. Spence v. Bailey, 465 F.2d 797 (6th Cir. 1972). The very decision in *Spence,* however, as favorable as it is to Sapp, illustrates by the cogency of the dissent the lack of constitutional certitude in this area. Absent such certitude, *Wood* dictates that damages may not be imposed on school board members. In the absence of authoritative decisions from the Supreme Court, from this court, or even from other circuits, we hold as a matter of law that the Board did not violate Sapp's "clearly established constitutional rights."

■ We see, therefore, no reason to reach a decision on the merits of Sapp's claim. Nonetheless, Sapp contends that we should reach such a decision so that the question of attorneys' fees may be decided. This circuit has recognized various exceptions to the American rule that attorneys' fees are not awarded as costs of the action. However, attorneys' fees will not be awarded against a party who has defended successfully. See Bond v. White, 508 F.2d 1397 (5th Cir.

---

**10.** Cardozo's concurring opinion may be better law today than the majority's. *See* Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 506 n. 2, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

1975); Sierra Club v. Lynn, 502 F.2d 43, 66 (5th Cir. 1974).

The judgment of the district court is affirmed.