**Jose F. OLIVARES et al.,
Plaintiffs-Appellants,**

v.

**Winston MARTIN, Director, San Antonio Development Corp., et al.,
Defendants-Appellees.**

**No. 75–2668.**

United States Court of Appeals,
Fifth Circuit.

May 31, 1977.

Rehearing Denied July 14, 1977.

Jose F. Olivares, pro se.

John E. Clark, U. S. Atty., Hugh P. Shovlin, Asst. U. S. Atty., San Antonio, Tex., for Sec. of Housing & Urban Renewal.

Phillip D. Hardberger, San Antonio, Tex., for Martin.

Before GODBOLD, SIMPSON and GEE, Circuit Judges.

GEE, Circuit Judge:

Jose Olivares appeals the district court's grant of defendants' motion to dismiss for lack of subject-matter jurisdiction.[1] After reviewing his complaint, we conclude that the district court was correct in dismissing Olivares' complaint. We cannot entirely agree with its reasoning, however, and we must add our own reasons for approving the court's order of dismissal.

Olivares' suit arises as a consequence of attempts by San Antonio, Texas, to renovate its downtown area. On March 22, 1968, the Urban Renewal Agency of the City of San Antonio (also known as the San Antonio Development Agency) entered into an agreement with the United States government under which the San Antonio Development Agency would carry out an urban renewal project (the "Rosa Verde Project, Tex. R–78") with federal financial assistance under Title I of the Housing Act of 1949, as amended, 42 U.S.C. §§ 1441–46, 1450–90 (1970). Included within the area designated for renewal was NCB–254, the city block in which appellant Olivares' hotel is located. Jose Olivares presently operates the hotel as a business tenant; he does not own the land underlying the hotel.

In 1974, the San Antonio Development Agency offered for sale property it had acquired in NCB–254. The property comprised 64,023 square feet in the northeast corner of the city block bounded by Dolorosa Street on the south and Laredo Street on the west. The agency offered the property for bidding in two parcels designated C–C–23(A) and C–C–23(B). Bidders were to make separate bids on each parcel, including in the bids their plans for redevelopment and/or rehabilitation and restoration. Segment C–C–23(A) (the northern segment) was offered for redevelopment for central business use. Segment C–C–23(B) (the southern segment) was offered for redevelopment for central business use with the condition that the purchaser agree to rehabilitate existing structures on the property and to restore a structure previously designated as having historic significance. The two parcels adjoin Olivares' hotel.

Olivares submitted a bid on the two parcels, but one wildly at variance with the bidding procedure. First, he bid on both parcels as a whole package instead of submitting individual bids on each parcel. Second, he failed to include in his bid the plans for redevelopment or rehabilitation and restoration required by the San Anto-

---

1. Mr. Olivares proceeds *pro se* in his appeal. We cannot accord him the advantage of the liberal construction of his complaint normally given *pro se* litigants, *see Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261 (1976), because he is a licensed attorney.

nio Development Agency. Third, Olivares' bid was irregular to the point of eccentricity: he offered to trade his claim for $225,-000 in relocation benefits for the parcels offered for sale. Finally, in addition to these irregularities, even taking the asserted $225,000 claim as the equivalent of cash, Olivares' bid proved lower than other bids submitted. The parcels were awarded to another bidder, and Olivares filed this suit.

Olivares alleges numerous claims under a multiplicity of federal statutes. First, he claims that he is a displaced person eligible for benefits under the Housing Act, as amended, 42 U.S.C. §§ 1441–46, 1450–90, and under the Urban Growth and New Development Act of 1970, 42 U.S.C. §§ 4501–03, 4511–32, and that San Antonio Development Agency has denied him benefits under federal statutes providing for relocation assistance to displacees. He further asserts that James Lynn, the then Secretary of the Department of Housing and Urban Development, is also liable for plaintiff's treatment. In addition to his individual claim, he attempts to pursue his challenge to the relocation program as a class action. Second, Olivares charges that by not accepting his bid the defendants again violated their statutory duty under the Housing Act, as amended, 42 U.S.C. §§ 1455(c)(1), and the Urban Growth and New Development Act of 1970, 42 U.S.C. §§ 4501–03, 4511–32, to provide relocation assistance to displacees. Implicit in this claim is that Olivares, as a displacee, was entitled to preference over absentee bidders. Third, Olivares complains that the decision of the Texas Supreme Court in *City of San Antonio v. Joe Olivares*, 505 S.W.2d 526 (Tex. 1974), was a denial of due process.[2] Fourth, Olivares seeks a declaratory judgment that he was a displaced person entitled to benefits, that his "interest in relocating his busi-

ness" afforded him preference over absentee bidders, and that his bid for the parcels was the successful bid. Finally, although not as a specific "cause of action," Olivares' pleadings observe that the San Antonio Development Agency was required to submit an Environmental Impact Statement pursuant to the requirements of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4331. Upon motion of the defendants, the district court dismissed for lack of subject-matter jurisdiction.

■ We have recently repeated that a complaint which alleges the existence of a federal question establishes jurisdiction, so that a dismissal for lack of jurisdiction is appropriate only when the court decides that a claim is frivolous or insubstantial, i. e., a claim that has no plausible foundation, or when the court concludes that a prior Supreme Court decision clearly forecloses the claim. *See Bell v. Health-Mor, Inc.*, 549 F.2d 342, 344 (5th Cir. 1977); *Hilgeman v. National Ins. Co.*, 547 F.2d 298, 300 (5th Cir. 1977). Bearing these principles in mind, we examine some of plaintiff's allegations.

■ Olivares attempts to ground jurisdiction on the Urban Growth and New Community Development Act of 1970, 42 U.S.C. §§ 4501–03, 4511–32, but that statute plainly has nothing to do with his case. The San Antonio Development Agency was created in 1966 under the relevant portions of the Housing Act, as amended, 42 U.S.C. §§ 1441–46, 1450–90, prior to the passage of the Urban Growth and New Community Development Act. That Act has no relevance to the operations or funding of the agency. Any claim against the agency under this Act is patently frivolous.[3]

■ Olivares also miscarries under 42 U.S.C. § 1981 (1970) and its jurisdictional

---

**2.** In that case the Texas Supreme Court held that the City of San Antonio lawfully closed Breneman Street even though the closing resulted in a taking of part of Olivares' leasehold on the Travis Plaza Hotel.

**3.** Olivares also relies on the congressional statement of purpose, findings, and declaration of policy found in the Act—generally endorsing

federal aid in promoting proper growth—to support jurisdiction. It is clear, however, that these pronouncements are too amorphous to create judicially enforceable rights, *see Sierra Club v. Lynn*, 502 F.2d 43, 55 (5th Cir. 1974), *cert. denied*, 421 U.S. 994, 95 S.Ct. 2001, 44 L.Ed.2d 484 (1975), and that any claim under them is insubstantial.

counterpart in 28 U.S.C. § 1343 (1970), because his complaint lacks essential elements giving rise to federal jurisdiction. It is necessary that he state a proper claim under § 1981 to vest a federal court with jurisdiction under 28 U.S.C. § 1343 (1970). *Campbell v. Gadsden County District School Board*, 534 F.2d 650, 653 n. 3 (5th Cir. 1976). Olivares fails to do so because he has not alleged that he was subjected to discrimination because of his race. *Cf. Riley v. Adirondack School for Girls*, 541 F.2d 1124 (5th Cir. 1976) (en banc) (race must be a factor in discrimination under § 1981). He alleged only that the defendants' supposed derelictions were "all detrimental to Plaintiff's rights and interests, and the same have been executed, or negligently not executed, under color of law, which amounts to a violation of 28 U.S.C.A. Section 1343 incorporating 42 U.S.C.A. Section 1981." To state a cause of action invoking the court's jurisdiction, Olivares was required to allege that race was a factor in the agency's actions. *See Riley, supra* at 1125–26.

■ As for Olivares' request that the district court review the judgment of the Texas Supreme Court, it properly declined jurisdiction. It is not the province of lower federal courts to review the appropriateness of civil decisions of a state's highest court; review of that judgment properly lies by writ of certiorari to the Supreme Court of the United States. *See* 28 U.S.C. § 1257(3) (1970). We approve the district court's decision not to assume such a mantle.

■ The district court proved too protective of its jurisdiction, however, in dismissing Olivares' other claims for lack of subject-matter jurisdiction. His claims under the relocation provisions of the Housing Act and the NEPA, although quite dubious, do suggest appropriate grounds for jurisdiction. We cannot sustain the district court's dismissal of claims on jurisdictional grounds, but we can and do conclude the district court was correct in dismissing the action for a different reason.[4] Olivares alleged no claims upon which relief could be granted.

Olivares asserts that his status as a "constructive displacee" entitles him to relocation assistance under the Housing Act, as amended, 42 U.S.C. §§ 1441–46, 1450–90,[5] and asks for a declaratory judgment to that effect. Yet Olivares has not attempted to press this claim of displacee status upon the agency in a regular manner—a prerequisite for judicial cognizance of his claim. Olivares' first appeal is to seek administrative aid and exhaust his administrative remedies. Only after doing so can he state a claim upon which a federal court may grant relief.[6]

■ Olivares' failure to exhaust his administrative remedies also forecloses his class action. Exhaustion of remedies applies to class actions in the sense that at

---

4. We have chosen this course and marked the path on other occasions. *See Sapp v. Renfroe*, 511 F.2d 172, 175 n. 2 (5th Cir. 1975); *Vaughan v. First National Bank*, 218 F.2d 804, 806 (5th Cir.), *cert. denied*, 350 U.S. 854, 76 S.Ct. 97, 100 L.Ed. 759 (1955). *See also Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1947). We would hesitate to do so if the defendants had not urged this ground for dismissal on the trial court and if both parties had not adequately discussed this ground for dismissal in their briefs as a part of their jurisdictional argument. *See Fruge's Heirs v. Blood Services*, 506 F.2d 841, 844 n. 2 (5th Cir. 1975).

5. Olivares also relies on the Uniform Relocation Assistance Act, 42 U.S.C. § 4621 (1970). The Act provides for the payment of relocation expenses of a person or business displaced by acquisition of real property for a program or project undertaken by a federal agency. State agencies acting as the agent for federal programs are considered "federal agencies," *see* 42 U.S.C. § 4628 (1970), so the Act includes actions by San Antonio Development Agency. We need not deal separately with this claim as it is substantially similar to the Housing Act claim.

6. It is not clear, and we do not decide, whether Olivares may even seek the aid of the federal court to review a denial of relocation assistance, *compare Will-Tex Plastics Mfg., Inc. v. H. U. D.*, 346 F.Supp. 654, 657–58 (E.D.Pa.1972) (no judicial review of HUD land acquisition) *with Tullock v. State Highway Comm'n*, 507 F.2d 712, 715 (8th Cir. 1974) (judicial review of relocation assistance permitted), but this question emphasizes the importance of the requirement that he first pursue his administrative remedies.

least one of the purported representatives of a class must have exhausted his administrative remedies. *See Phillips v. Klassen,* 163 U.S.App.D.C. 360, 502 F.2d 362, 369, *cert. denied,* 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974). *Cf. Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 498–99 (5th Cir. 1968) (exhaustion of remedies requirement satisfied for class action if named plaintiff representing class exhausted remedies). Olivares has not given the agency an opportunity to exercise administrative reform to meet his allegations. *See Franks v. Bowman Transportation Co.,* 495 F.2d 398, 420 (5th Cir. 1974). Any "review" by us at this stage is premature.

■ As for his claim that he was entitled to judicial review of the agency's refusal to grant him bid preference, Olivares neither advances nor have we found any federal statute that grants bid preference to an adjacent tenant or even suggests that such a preference should be granted.[7] Without some basis for his claim in a statute or in agency action.[8] Olivares has not stated a claim upon which relief may be granted.

7. State law at least addresses the issue, granting an original *owner* the first right to repurchase at the agency's offering price. Tex.Rev. Civ.Stat.Ann. art. 1269*l*–3, § 22 (1963).

8. Olivares may be relying on the case of *M. M. Crockin Co., Inc. v. Portsmouth Redevelopment & Housing Authority,* 437 F.2d 784 (4th Cir. 1970), in attempting to state a claim. In *Crockin* the Housing Authority acquired the building wing housing the carpeting department of a furniture and carpeting retail business. The wing including the furniture business was not acquired. The business contacted the Authority, emphasized the integrated nature of its retail activities, and requested relocation of its carpeting department adjacent to the furniture wing. The Housing Authority orally promised the business that it could reacquire the condemned parcel, but it later combined the parcel with another and sold the unit to someone else. The Housing Authority's relocation assistance plan made no special provisions for the business' relocation. The Fourth Circuit held that the business had standing and a cause of action against the Housing Authority for not honoring its agreement and for failing to adopt an adequate relocation assistance plan and against HUD for approving the relocation assistance plan.

■ Finally, Olivares alleges that the San Antonio Development Agency was derelict in failing to file an Environmental Impact Statement as required by the National Environmental Policy Act, 42 U.S. C.A. § 4332 (the NEPA). The agency's omission is understandable, because all the events relevant to invoking the NEPA requirements occurred before its passage. The contract between the Department of Housing and Urban Development and the San Antonio Development Agency was signed in 1968. It delineated a tract for urban renewal, a delineation that has not changed. The NEPA became effective in 1970. We have held that in the absence of major federal action subsequent to the effective date of the NEPA it may not be applied retroactively. *See Named Individual Members of the San Antonio Conservation Society v. Texas Highway Department,* 446 F.2d 1013, 1025 & n. 23 (5th Cir. 1971). As Olivares notes in his complaint, federal authorization for the urban renewal project came in 1966, but he has alleged no further major federal action occurring after 1970 so as to state a claim under the NEPA.[9]

Olivares' suit does not have any of the attributes that gave the business in *Crockin* a cognizable claim. First, the Development Agency has not taken any of Olivares' land for its own purposes. It took land adjacent to Olivares' hotel, and Olivares is only a tenant on an unaffected lot. Second, the Development Agency made no contract with Olivares to give him preference. Third, Olivares has no special need for the adjacent land. Finally, even if Olivares were entitled to bid preference because of his displacee status, his failure to pursue an administrative adjudication of that status renders his preference claim premature. The Agency had no reason to grant him preference if he was not a displacee. In short, Olivares possesses none of the prerequisites possessed by the business in *Crockin* upon which to found his claim.

9. Although not appearing in the pleadings, the appendix on appeal includes evidence of increased federal funding occurring after 1970. In 1971 and again in 1974, the federal government increased the amount of the project loans, capital project grants, and the relocation assistance grant. The First Circuit has suggested that substantial increases in federal funding for projects begun prior to the applicability of the NEPA may qualify as *further* major federal action requiring an environmental im-

Without a showing that the NEPA is applicable, Olivares has failed to state a claim upon which relief may be granted.

Appellant's complaint, if not profound, is at least eclectic. Yet it wants the crucial prerequisite of every complaint in federal court, assertion of at least one nonfrivolous claim within our jurisdiction or at least one claim upon which relief might be granted. None of Olivares' causes of action meets these tests, and we affirm the trial court's dismissal of some of the claims for lack of jurisdiction and affirm the dismissal of others that fail to state a claim upon which relief may be granted.

AFFIRMED.

pact statement. *See Jones v. Lynn*, 477 F.2d 885, 890 (1st Cir. 1973). It is plain from the material accompanying the increases, however, that the increased funding occurred only to cover the rising costs of the originally contemplated project. *See San Francisco Tomorrow v. Romney*, 472 F.2d 1021, 1025 (9th Cir. 1973). As such the increases only reflect a conforma-tion of the originally approved contract proposal. *Id.* The critical act of federal approval came before the NEPA became effective, *see Named Individual Members of the San Antonio Conservation Society v. Texas Highway Department, supra* at 1025 n. 23, so that the NEPA forms no basis for Olivares' claim.