**CITY OF ATLANTA**

v.

**UNITED STATES of America, et al.**

**Civ. A. No. C80–2230.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Jan. 28, 1982.

---

Marva Jones Brooks, J. M. Harris, Jr., Irmina Rivero Owens, Atlanta, Ga., for plaintiff.

Curtis E. Anderson, Asst. U. S. Atty., Atlanta, Ga., for defendant; Leonard A. Ceruzzi, Asst. Chief Counsel, U. S. Dept. of Transp., Federal Aviation Administration, Washington, D. C., of counsel.

## ORDER

ORINDA D. EVANS, District Judge.

Plaintiff City of Atlanta (the "City") proposes to construct an additional runway at Hartsfield International Airport, which it owns and operates. When the runway is completed, Defendants (collectively "the FAA") must install navigational equipment and adopt flight procedures for its use. The question before the Court is the applicability of the provisions of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4331 et seq., to these FAA actions. The FAA contends that NEPA requires it to prepare at least an Environmental Assessment before taking any action [1]; the City disagrees, and brings this action for a declaratory judgment that NEPA is inapplicable.[2] The parties have

---

1. The purpose of an Environmental Assessment is to determine whether the FAA's proposed actions constitute "a major federal action significantly affecting the quality of the human environment" within the meaning of 42 U.S.C. § 4332(2). FAA Order 1050.1C, 45 Fed.Reg. 2244, 2251 (1980) ("FAA Order"), at ¶ 300. If it is, then the FAA cannot act until an Environmental Impact Statement is prepared. Id.

2. In December, 1977, in litigation involving the construction of a new terminal at Hartsfield, the City stated in a brief submitted to Judge Freeman, "Obviously, [if] the fourth runway is ultimately developed into a formal proposal (which it may or may never be), then an environmental impact statement would be re-quired." Pretrial Brief submitted for Defendant City of Atlanta filed June 21, 1977, in *South College Park Homeowners Association v. Adams*, No. C77–997A. The City now considers its 1977 unqualified statement in *South College Park* to be erroneous, and notes that it was made "in passing, without benefit of research." Plaintiff's Brief filed December 9, 1981 at 2. It is nonetheless possible that Judge Freeman relied on the City's earlier statement to some extent; *see* Order of Dismissal in *South College Park* filed June 27, 1977 at 14 n.5. Without explicitly taking this position, the FAA appears to suggest that the City is now estopped from arguing its position in this case. The Court need not and does not consider this suggestion, but sincerely hopes that the City has made no

stipulated certain facts, and have filed Cross Motions for Summary Judgment.

The undisputed material facts can be found in the Stipulations of Fact filed September 17, 1981. The Court will briefly summarize the facts necessary for its decision.

In 1968, the City submitted an Airport Layout Plan ("the Plan") to the FAA. This Plan, which provided for a considerable upgrading of the facilities at Hartsfield, included four runways. The FAA approved the Plan on June 12, 1968. NEPA became the law of the land on January 1, 1970.

Presently Hartsfield has three runways. The City now plans to construct the fourth runway to "increase the capacity of [Hartsfield] to handle flight operations and [to aid the City] in meeting anticipated demands for increased runway capacity." Stipulations of Fact at ¶ 13. The FAA is responsible for maintaining air safety. To discharge this responsibility, it must construct navigational aids for the assistance of aircraft using the proposed runway and it must adopt takeoff and landing procedures for those aircraft and others "in the navigable airspace relating to the [proposed] fourth parallel runway." Stipulations of Fact at ¶ 23. When completed, the runway could not be used until the FAA takes these actions.[3] These are the only actions the FAA or any other agency of the federal government will take with regard to the runway, which the City intends to construct with its own funds.

Obviously, if the FAA had taken all necessary actions to make the runway operational, this case would not be before the Court today. Construction on the runway has not begun, and the FAA has neither installed the necessary navigational equipment nor developed the new air traffic flow patterns for Hartsfield that use of the runway will require. Consequently, the issue before the Court is not the retroactive application of NEPA to federal actions taken before July 1, 1970; rather it is the application of NEPA to federal actions occurring after NEPA became effective in a project undertaken before NEPA's effective date.

According to the City, the FAA took its only "major federal action" with respect to the additional runway in 1968, when it approved the four-runway Plan. Later FAA involvement in placing the runway into operation is not sufficient to trigger NEPA, according to this theory, because all post-NEPA environmental impacts are the necessary result of the pre-NEPA critical federal action. In the words of the Ninth Circuit, "Each ribbon of concrete that is laid has an impact on the environment, but that impact is determined by the plan already adopted." *Robinswood Community Club v. Volpe*, 506 F.2d 1366, 1370 (9th Cir. 1974).

The FAA views its actions with respect to the runway in a different light. It argues that the installation of navigational aids and the development of flight paths and procedures are in themselves major federal actions significantly affecting the quality of the human environment. Because they are post-NEPA major federal actions in a project that straddles NEPA's effective date, the FAA contends, NEPA applies. In the words of the Sixth Circuit,

We believe it more consonant with congressional intent to hold that an agency must file an impact statement whenever

---

factual or legal arguments in its briefs in this case "in passing, without benefit of research."

**3.** The parties neglected to stipulate this fact, but it is implicit in their arguments. *See* FAA's Brief filed November 16, 1981 at 6 ("Federal action by the FAA is a prerequisite to the operational use of the proposed fourth parallel runway"); City's Brief filed September 25, 1981 at 3 ("It is the City's position that in approving the [Plan] showing the proposed fourth runway, the FAA ... necessarily approved ... the operation and use of the run-

way"). Furthermore, the FAA is charged by law with jurisdiction over air traffic rules, *see* 49 U.S.C. § 1348(c), and any use of the runway without FAA permission and supervision presumably would violate federal law. *Cf.* 14 C.F.R. § 91.87(f)(1) ("No person may operate an aircraft taking off from an airport with an operating control tower except in compliance with the following: (1) Each pilot shall comply with any departure procedures established for that airport by the FAA"). The Court therefore finds this fact to be undisputed.

the agency intends to take steps that will result in a significant environmental impact, whether or not these steps were planned before January 1, 1970, and whether or not the proposed steps represent simply the last phase of an integrated operation most of which was completed before that date.

*Environmental Defense Fund v. Tennessee Valley Authority,* 468 F.2d 1164, 1177 (6th Cir. 1972).

The Sixth Circuit view appears to be the better one. While Congress did not specifically address the issue of the applicability of NEPA to ongoing projects, it did direct that NEPA apply "to the fullest extent possible." 42 U.S.C. § 4332. The regulations of the Council on Environmental Quality [4] provide that "NEPA shall continue to be applicable to actions begun before January 1, 1970 to the fullest extent possible." 40 C.F.R. § 1506.12(b). Many other courts have adopted variations on the Sixth Circuit's theme; among these courts are the Ninth Circuit, on whose earlier *Robinswood* opinion the City relies, *see Westside Property Owners v. Schlesinger,* 597 F.2d 1214, 1224 (9th Cir. 1978), and this Court, *see Morningside-Lenox Park Association v. Volpe,* 334 F.Supp. 132, 144 (N.D.Ga.1971).[5] Scholarly opinion has generally agreed with the Sixth Circuit that NEPA should apply to post-NEPA federal actions that by themselves constitute major federal action, regardless of the stage of the project on January 1, 1970. *See, e.g., Anderson, supra* note 5, at 398; W. Rodgers, *Environmental Law* § 7.7, at 766 (1977). Furthermore,

although the law of the former Fifth Circuit [6] is less than clear on this point, that court, too, apparently would require the Court to consider whether the remaining federal action would itself be sufficient to trigger NEPA. *See Olivares v. Martin,* 555 F.2d 1192, 1197 (5th Cir. 1977) ("In the absence of a major federal action subsequent to the effective date of NEPA, it may not be applied retroactively"). The Court would be inclined to favor the Sixth Circuit view; however, it need not decide which test to adopt because compliance with NEPA is required under either test.

The FAA actions necessary to make the runway operational fall into two categories: the FAA must "formulate and adopt approach and departure procedures to be used by aircraft operating in the navigable airspace relating to the fourth parallel runway," and must "establish, operate and maintain the various air navigation facilities to be used by aircraft approaching to and from the fourth parallel runway." Stipulations of Fact at ¶ 23. Under the Sixth Circuit view favored by the FAA, the Court must decide if these further FAA actions would be sufficient to trigger NEPA if undertaken separately.

■ FAA regulations provide that each of these two types of actions require an environmental assessment. FAA Order, *supra* note 1, at 2259, App. 2 ¶ 4(c); [7] *id.* at 2260, App. 3 ¶ 4(a).[8] Furthermore, courts have held that various FAA actions or inactions that result in substantially increased air traffic at an airport are subject to

---

4. The Council on Environmental Quality was established by NEPA. 42 U.S.C. § 4342. One of its purposes is "to review and appraise the various programs of the Federal Government in light of the policy set forth in [NEPA]." 42 U.S.C. § 4344(3).

5. For other examples, *see Calvert Cliffs' Coordinating Committee, Inc. v. Atomic Energy Commission,* 449 F.2d 1109 (D.C.Cir.1971); *Environmental Defense Fund v. Corps of Engineers,* 325 F.Supp. 728 (E.D.Ark.), *aff'd.* 470 F.2d 289 (8th Cir. 1972), *cert. denied,* 412 U.S. 931, 93 S.Ct. 2749, 37 L.Ed.2d 160 (1973); cases cited in Anderson, *The National Environmental Policy Act,* in *Federal Environmental Law,* 403 n.606 (E. Dolgin & T. Guilbert ed. 1974).

6. Former Fifth Circuit cases decided before October 1, 1981, such as *Olivares* are the law of the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206 at 1210 (11th Cir. November 3, 1981) (en banc).

7. This regulation provides:
   The following category of projects are subject to an environmental assessment . . . (c) establishment or relocation of Instrument Landing or Microwave Landing Systems (ILS or MLS), Approach Light Systems (ALS), and Runway End Identifier Lights (REILS). . . .

8. This regulation provides:
   The following actions are subject to environmental assessment. . .

NEPA. *See, e.g., Virginians for Dulles v. Volpe*, 541 F.2d 442, 445 (4th Cir. 1976) ("We hold that the FAA's acquiescence in the vastly expanded use of the [Washington, D. C.] airports requires an impact statement"); *Illinois ex rel. Scott v. Butterfield*, 396 F.Supp. 632, 635 (N.D.Ill.1975) (cause of action is stated by complaint alleging that FAA had failed to prepare environmental impact statement with regard to its "pursu[it] [of] a policy of unlimited growth in air traffic at [O'Hare] Airport.").[9] One district court in the former Fifth Circuit has even stated in dicta that "there is no doubt that an environmental impact statement will be required" if the FAA should decide to permanently shift *existing* air traffic from one runway at the Dallas-Fort Worth airport to another. *Irving v. FAA*, No. CA 3–81–0947–R, slip op. at 18 (N.D.Texas July 6, 1981). The Court agrees with the FAA and with these judicial opinions that the installation of navigational equipment and the adoption of flight procedures that render a new runway operational are "major federal actions significantly affecting the quality of the human environment" within the meaning of NEPA, because they make possible substantially increased air traffic with its attendant increases in noise and air pollution. Because these further federal actions will be taken after NEPA's effective date, under the Sixth Circuit view NEPA applies to them regardless of when the runway project was begun or approved.

NEPA also applies to the FAA actions under the *Robinswood* approach favored by the City. *Robinswood* held that a highway project which had received federal design approval prior to January 1, 1970 was not subject to NEPA, despite post-NEPA "substantial participation" by the federal government in the financing and construction of the highway. 506 F.2d at 1370. The Court based its decision on its finding that "after final design approval, nothing *further* occurs which (1) is major and (2) has a significant impact on the environment other than what is contemplated by the approved design." *Id.* (emphasis in original). The City contends that the final design approval in *Robinswood* is identical to the FAA's 1968 approval of the four-runway Plan, and argues that one court has already so held, citing *Doss v. Adams*, No. 77–3412–NA–CV (M.D.Tenn. May 16, 1978).

*Doss* is easily distinguishable from this case, however, and the distinctions reveal the inapplicability of the *Robinswood* theory to the fourth Hartsfield runway. Prior to January 1, 1970, the FAA had approved an airport layout plan in *Doss* that included a proposed runway extension. The airport at issue in *Dₒ* was a general aviation county airport, with no control tower or instrument landing system; in fact, "no on-the-ground federal activity takes place there except for routine safety inspections." Slip op. at 1–2. The court held that the pre-NEPA design approval was the only major federal action in connection with the runway extension and therefore NEPA was inapplicable.

Hartsfield, of course, is anything but a county airport, and the FAA must take certain affirmative actions before its proposed runway can be used. Nor are those actions ones in which the FAA is bound to follow a plan predetermined by its design approval, as in *Robinswood*; the FAA has considerable discretion in deciding where to route the additional air traffic, to reroute existing air traffic, and perhaps in the type and placement of its navigational

---

(a) new or revised air traffic control procedures which routinely route air traffic over noise sensitive areas at less than 3,000 feet above the surface.

**9.** The primary allegations of the complaint in the O'Hare case were that the FAA had:

(b) undertaken and completed the installation of various flight control, navigational and other equipment which has increased the capacity of the airport to accommodate additional aircraft;

(c) authorized and directed the use by aircraft of a newly constructed runway and taxiway;

(d) established, altered or otherwise changed or controlled the standard flight paths and patterns of aircraft arriving at and departing from the airport.

396 F.Supp. at 635. These alleged actions are, of course, identical to the FAA actions at issue in this case.

aids as well.[10] It is true that "every ribbon of concrete that is laid has an impact ... determined by the plan already adopted." *Robinswood*, 506 F.2d at 1370. However, the flight plans and procedures to be adopted by the FAA, and perhaps its placement of navigational aids, were not immutably determined by the adoption of the Plan. Therefore, the environmental impact of those actions was not necessarily determined in 1968, and the *Robinswood* theory does not relieve the FAA of its statutory duty to consider the environmental affects of its actions.

Finally, the Court notes that there is a third popular judicial approach to the application of NEPA to projects that straddle its effective date.[11] This approach involves the balancing of the costs of modifying the project against the environmental benefits gained thereby; if the project is not so far advanced that changing its design for environmental reasons would be too costly to be practical, then NEPA should apply to it. *See, e.g., Arlington Coalition on Transportation v. Volpe*, 458 F.2d 1323 (4th Cir. 1972); *Anderson, supra* note 5, at 405–08. The City has not yet awarded any contracts for the construction of the runway, and presumably the FAA has not begun to develop new flight procedures or to install its navigational aids. It is obvious that this is not a case in which "the costs of altering or abandoning the project could so definitely outweigh whatever benefits that might accrue therefrom that it might no longer be 'possible' to change the project in accordance with [NEPA]." *Arlington Coalition*, 458 F.2d at 1331. Therefore NEPA is applicable to the remaining federal action at Hartsfield under the *Arlington Coalition* theory as well.

Congress intended NEPA to be applied "to the fullest extent possible." This "sets a high standard for the agencies," *Calvert Cliffs*, 449 F.2d at 1114; to its credit, the FAA is attempting to live up to this standard. The Court holds that the FAA's approval of the four-runway plan in 1968 does not relieve it of its statutory duty to consider environmental factors in performing those post-NEPA actions necessary to make the runway operational.

Defendants' Motion for Summary Judgment is GRANTED. Plaintiff City of Atlanta's Motion for Summary Judgment is DENIED. The Clerk of the Court is DIRECTED to enter final judgment in favor of Defendants.

10. The Court notes that the Plan set out the placement of navigational aids for the fourth runway. However, the technology may have developed over the past 14 years such that the FAA would decide not to use the specific aids and positions indicated in the Plan.

11. It is not without reason that this issue has been called "clearly the most tangled web of NEPA law." *Anderson, supra* note 4, at 396.