[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13605
Non-Argument Calendar

_____

D.C. Docket No. 9:17-cv-80064-DLB

LISA F. SANTOS,

                                                            Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

                                                            Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 17, 2018)

Before MARCUS, MARTIN and JILL PRYOR, Circuit Judges.

PER CURIAM:

Lisa Santos, a former practicing attorney proceeding pro se, appeals the

district court's order affirming the denial of her applications for Social Security

Income ("SSI") and Disability Insurance Benefits ("DIB") by an administrative

law judge ("ALJ") on behalf of the Commissioner of Social Security. In denying Santos's claims, the ALJ found that Santos had medically determinable impairments from affective disorder, anxiety disorder, and alcohol and substance abuse addiction disorder that limited her ability to work. As for Santos's residual functional capacity ("RFC"), the ALJ found that in light of her impairments and the medical opinions of two agency psychological examiners (Drs. Theodore Weber and Lauriann Sandrik), Santos would be able to perform simple, routine, and repetitive tasks at a non-production-rate pace with occasional interactions from supervisors, coworkers, and the public. The ALJ added that Santos's subjective complaints of her symptoms did not establish a disability claim because there were discrepancies between her testimony and the record about her history of substance abuse and the medical evidence. The ALJ found that, based on Santos's RFC, she could not return to her previous occupation as an attorney but a significant number of jobs existed in the national economy that she would be able to do.

On appeal, Santos argues that: (1) the ALJ failed to include all of the social limitations supported by the record, including limitations confirmed by Weber, Sandrik, and Dr. Ilene Kaskel, a consulting physician for a state agency evaluating similar claims; (2) the ALJ violated due process by not allowing her to cross-examine Dr. Robert Seifer, the agency's consulting examiner; (3) the ALJ applied an erroneous definition of "episodes of decompensation" in assessing the severity

2

of her impairments; (4) the ALJ improperly rejected records of her psychiatric history from her prior treating physicians, Drs. Ronald Kurlander and Christopher Mahon; (5) the ALJ erred in giving little weight to, and effectively rejecting, the opinion of Dr. Raul Rodriguez, a physician she consulted before the ALJ's hearing on the merits of her claims; and (6) the ALJ improperly considered her testimony regarding the severity of her symptoms, requiring her testimony to be taken as true as a matter of law.  After thorough review, we affirm.

Our review of an agency's final determination is limited to whether substantial evidence supports the ALJ's findings and whether the correct legal standards were applied.  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam).  Substantial evidence is more than a scintilla, and is the relevant evidence a reasonable person would accept as adequate to support a conclusion.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011).  We will not decide facts anew, reweigh the evidence, or substitute our judgment for that of the ALJ.  Id.  An error is harmless if it does not affect the ALJ's ultimate decision.  See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).

When the Appeals Council denies review, we consider only the evidence actually presented to the ALJ to decide whether substantial evidence supports the ALJ's decision.  Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998).  We will not address arguments not raised in the district court, except for arguments that

were impliedly intended for appeal in a party's argument before the district court. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004); Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1269 (11th Cir. 2015). Arguments raised for the first time in a reply brief are not properly before us. Thacker v. Tenn. Valley Auth., 868 F.3d 979, 982 (11th Cir. 2017).

First, we are unpersuaded by Santos's claim that the ALJ's RFC finding was not supported by substantial evidence. Titles II and XVI of the Social Security Act, which govern DIB and SSI, define "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); see also Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). In assessing the merits of a claim for DIB or SSI, an ALJ engages in a five-step process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step asks if the claimant is currently working. If she is not, step two addresses whether she has a severe medically determinable physical or mental impairment that falls under certain duration requirements. If she has one of these impairments, step three examines whether the impairment meets certain severity requirements. If the impairment is sufficiently severe, then the claimant will be found disabled. If the impairment does not meet prescribed requirements, the ALJ proceeds to step four,

4

which asks whether the claimant possesses sufficient RFC to continue doing her past relevant work. Finally, if the claimant does not possess the RFC to do her past relevant work, step five asks whether, considering the claimant's RFC, age, education, and work experience, she can make an adjustment to other work. Id. §§ 404.1520(a)(4), 416.920(a)(4).

A claimant bears the burden of proof for establishing the existence of a disability and must produce evidence in support of a claim, including at the RFC stage. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The agency bears the burden to prove that other jobs exist in the national economy that the claimant can perform. Winschel, 631 F.3d at 1180. An ALJ can make this determination by reference to the Medical-Vocational Guidelines or through the testimony of a vocational expert ("VE"). Id. In order for the VE's testimony to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Id. (quotations omitted). An ALJ may incorporate the findings made in conjunction with a claimant's RFC in posing a hypothetical question to the VE. Id.

In deciding the claimant's RFC, the ALJ must consider all relevant medical evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ must state with particularity the weight given to a medical opinion and the reason for according it that weight. Winschel, 631 F.3d at 1179. Without a statement of the weight the

5

ALJ gave to a medical opinion, we cannot determine whether the ALJ's final determination was rational and supported by substantial evidence. Id. A "medical opinion" is defined as a statement from an acceptable medical source that "reflect[s] judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). A physician's notes can qualify as a medical opinion under this definition. See Winschel, 631 F.3d at 1179. Similarly, the opinions of agency psychological consultants may be considered medical opinions, and their findings and evidence are treated similarly to the medical opinion of any other source. 20 C.F.R. §§ 404.1513a(b), 416.913a(b).

Here, the ALJ's RFC determination -- which incorporated Santos's ability to perform simple, routine, and repetitive tasks at a non-production-rate pace while occasionally interacting with supervisors, co-workers, and the public -- was supported by substantial evidence. Indeed, because Santos challenges the limitations included in the RFC finding and not whether the ALJ correctly applied the RFC finding to determine whether jobs existed in the national economy, Santos bore the burden to prove that she had limitations from her disability. See Ellison, 355 F.3d at 1276; Winschel, 631 F.3d at 1180.

To the extent Santos challenges the ALJ's finding based on evidence in the record, Dr. Weber's overall conclusions support the RFC finding. Dr. Weber

6

generally concluded, and Dr. Sandrik later confirmed during reconsideration, that Santos would be able cooperate with others, behave appropriately, and react or adapt to her work environment appropriately. These general findings included the "moderate" limitations Weber noted -- including that Santos could not complete a normal work schedule without interruptions from her symptoms and was unable to respond appropriately to criticism from others -- and Weber added that Santos was able to perform work that was less demanding than her prior job as an attorney. Dr. Weber's final conclusions that Santos had social limitations was accurately mirrored in the ALJ's finding that she could have "occasional interaction with others," which was based on Santos's statements that she had difficulties in social situations, her daily activities, and medical evidence at that stage.

As for Santo's argument that the ALJ did not assign a weight to Dr. Kaskel's opinion, she did not present it to the district court and has therefore waived it. Crawford, 363 F.3d at 1161. But in any event, any error was harmless here. The record reveals that the ALJ accurately summarized Kaskel's report, and there was more than enough evidence to support the RFC finding. Dr. Kaskel's diagnosis was similar to that of the other physicians who reported that Santos suffered depression, anxiety, and substance abuse disorders. Notably, while Santos claims that Kaskel's testimony supported a limitation not included in the RFC finding, Kaskel did not elaborate on her general prognosis that Santos experienced

emotional distress and had inadequate coping skills, and she did not include any statements in her opinion as to Santos's functionality in a work environment. These general statements were not enough to overcome the evidence in the record -- particularly from Drs. Weber and Sandrik -- showing that Santos's self-reports of her social limitations were not as severe as she claimed. Indeed, this is not a case like Winschel, 631 F.3d at 1179, where the ALJ failed to provide enough information to know how he came to his decision. In short, Santos failed to present any substantive evidence directly contradicting the ALJ's finding about her social limitations, and the RFC ruling was supported by substantial evidence.

We are also unconvinced by Santos's claim that the district court abused its discretion at the hearing by not letting her cross-examine Dr. Seifer, the agency's consulting examiner whose opinion Santos says was inaccurate. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quotations omitted). An ALJ has a basic duty to develop a full and fair record. Ellison, 355 F.3d at 1276. This duty is greater for an unrepresented claimant, but a claimant must show prejudice to warrant reversal. Graham v. Apfel, 129 F.3d 1420, 1422-23 (11th Cir. 1997); see also Hudson v. Heckler, 755 F.2d 781, 784-85 (11th Cir. 1985). "Due process is violated when a claimant is denied the opportunity to subpoena and cross-examine those who submit medical reports."

8

Hudson, 755 F.2d at 784. We previously vacated and remanded an ALJ's ruling when the ALJ mainly relied on a post-hearing report to make findings, and the opportunity to submit post-hearing evidence to rebut the report was insufficient. Demenech v. Sec'y of Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389, 404-05, 410 (1971).

Because Santos has not challenged the applicable standard of review, and because it makes no difference to the outcome, we assume as we've done before that abuse of discretion is the proper standard to apply. See Demenech, 913 F.2d at 884 (assuming, without deciding, that an ALJ's decision to deny cross-examination in a social security proceeding is reviewed for abuse of discretion where the appellant did not challenge the application of that standard to his due process claim). And we can find no abuse of discretion here. For starters, the record suggests that the ALJ did not deny Santos an opportunity for cross-examination. Although Santos filed a written request for Dr. Seifer's presence, the ALJ apparently saw that request for the first time at the hearing and noted that she had never had a consulting examiner present for a hearing. When Santos began to lodge an objection, the ALJ, in an effort to make sure that Santos's concerns were addressed, said that she would take Santos's criticisms of Seifer's report into account and gave Santos the opportunity to submit written interrogatories as an alternative. Notably, Santos agreed to that arrangement, which suggests that she

9

withdrew her objection and believed that her rights were fully protected at the hearing.  Further, unlike in Demenech, Dr. Seifer's report was rendered before her merits hearing, which gave Santos an opportunity to review it, voice her concerns, and present further evidence.  See Mathews, 424 U.S. at 333; Demenech, 913 F.2d at 884.  That Santos is legally trained also suggests that the ALJ had no greater duty to develop the record for her claims or explain the agency's subpoena procedures.  See Hudson, 755 F.2d at 784-85.[1]  On this record, we conclude that the ALJ did not deny Santos the opportunity for cross-examination but, rather, attempted to correct an oversight while still protecting her rights.

And in any event, Santos has not shown prejudice.  See Graham, 129 F.3d at 1422-23.  As we've noted, Santos does not point to any additional evidence that would have aided the ALJ's decision-making beyond her arguments that Seifer's report was unreliable, which the ALJ considered.  Santos's failure to submit interrogatories undermines her argument that she would have elicited any further evidence.  The ALJ accorded Dr. Seifer's report "little weight" specifically because of Santos's statement that he misconstrued her statements, and the ALJ expressly disagreed with Seifer's opinion on Santos's capacity for social functioning based Santos's assertions that she had trouble interacting socially -- as

---

[1] Though pro se litigants are normally afforded liberal construction, we do not typically do so for former attorneys like Santos.  Olivares v. Martin, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977); see also Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all Fifth Circuit decisions issued before October 1, 1981).

reflected in the brief summary the ALJ provided for Seifer in comparison to the other medical evidence. What's more, the record contained opinions from at least seven medical professionals, indicating that the ALJ had a variety of sources to evaluate Santos's condition. Because Santos cannot show prejudice, we need not consider Santos's arguments about whether the ALJ followed its internal rules or whether its failure to do so could constitute a violation of due process.

As for Santos's claim that the ALJ erred in finding that she had suffered only two episodes of decompensation (resulting in two hospitalizations), we do not agree. In step three of the five-step process, the Listing of Impairments describes impairments considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a); see 20 C.F.R. § 404, Subpart P, App. 1. A claimant's mental impairments are evaluated based on how they impact these functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3) (2016). "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. § 404, Subpart P, App. 1 § 12.00(C)(4) (2016).

Here, the ALJ's finding that Santos had suffered only two episodes of decompensation was supported by substantial evidence. Santos relies on the opinion of her prior treating physician, Dr. Mahon, to suggest that other episodes occurred, but his notes maintained his diagnosis that Santos had anxiety and depression and was prescribed antidepressants. These observations did not differ markedly from any of his other notes or other evidence in the record showing Santos's long-term conditions. Although Santos argues that she was terminated from three jobs and prescribed several medications, Dr. Mahon's own notes -- providing that Santos had "low grade depression" and some success with different medication -- do not support her argument that these events constituted episodes of decompensation. Moreover, contrary to Santos's suggestion, even if decompensation <u>may</u> be inferred from a change in medication, the ALJ is not required to make that finding. <u>See</u> 20 C.F.R. § 404, Subpart P, App. 1 § 12.00(C)(4) (2016). Because Santos fails to show that anything else in the record satisfies the agency's definition of an episode of decompensation, the ALJ's finding was supported by substantial evidence.

Similarly, we are unconvinced by Santos's claim that the ALJ improperly rejected records of her psychiatric history from her prior treating physicians, Drs. Kurlander and Mahon. In considering medical evidence, the agency's regulations divide the weight accorded to medical opinions by a physician's status as a

treating, examining, or non-examining source.  See 20 C.F.R. § 404.1527(a)(2), (c), 416.927(a)(2), (c).  Generally, the ALJ gives more weight to a medical opinion from a claimant's treating physician -- a medical professional who has previously provided treatment or has an ongoing treatment relationship with the claimant.  Id. §§ 404.1527(a)(2), (c)(2), 416.927(a)(2), (c)(2).  If the ALJ determines that a treating source's medical opinion on the nature and severity of the claimant's impairment(s) is well-supported and consistent with other substantial evidence, the ALJ must give it controlling weight.  Id. §§ 404.1527(c)(2), 416.927(c)(2).  The ALJ may discredit the opinion of a treating physician if there is good cause to do so.  Crawford, 363 F.3d at 1159.  We've previously held that good cause exists where the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  Winschel, 631 F.3d at 1179.  "[T]he ALJ may reject any medical opinion if the evidence supports a contrary finding."  Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987).

Here, Mahon's and Kurlander's notes, even considered as medical opinions under the agency's definition, were of limited relevance to Santos's claims because they predated her alleged disability date.  The ALJ expressly explained that she accorded "little weight" to Dr. Mahon's opinions because they predated Santos's alleged onset date in 2013 -- which satisfied the requirement that the ALJ state

13

reasons on the record with particularity.    See Winschel, 631 F.3d at 1179. Although the ALJ did not make an express finding about the weight accorded to Dr. Kurlander's opinions, the ALJ clearly treated Kurlander's notes similarly to Mahon's.  As the record reflects, the ALJ summarized Mahon's and Kurlander's records together and commented that Kurlander's notes arose prior to Santos's alleged onset date, as she had for Mahon.  Thus, even if the ALJ erred by not making an express finding about the weight accorded, the error was harmless because the record was adequately preserved for judicial review.  See Winschel, 631 F.3d at 1179; Diorio, 721 F.2d at 728.

The record also shows that the ALJ's limited consideration of Drs. Mahon and Kurlander's records was justified.  See Winschel, 631 F.3d at 1179.  Whether the ALJ discredited Mahon's and Kurlander's opinions for being unreliable, or whether she considered them less relevant due to their time frame, any error was harmless.  At most, their notes showed that Santos suffered from depression and anxiety while she had been employed, and they spoke little to the primary issues before the ALJ -- specifically, Santos's social functioning, condition after her alleged date of disability, and ability to perform some work.  The fact that Santos was employed during their treatment period, and was even stable at some points, showed that she had a history of mental health issues, but not of the severity required under the definition of disability.    See 42 U.S.C. §§ 423(d)(1)(A),

14

1382(c)(3)(A).  Further, Drs. Mahon's and Kurlander's diagnoses and treatment of Santos largely concurred with the analyses of other medical professionals in the record that the severity of Santos's impairments limited her ability to work, but did not render her disabled.  The only portion of their notes that contradicted the rest of the record concerned Santos's history of substance abuse, which was of limited relevance since they predated the relevant time frame.  Therefore, even if the ALJ erred by giving Mahon's opinion "little weight," implying she found it unreliable, any error was harmless based on the opinions' relevance to Santos's claims.  See Diorio, 721 F.2d at 728.

Likewise, we reject Santos's claim that the ALJ erred in giving little weight to, and effectively rejecting, the opinion of Dr. Rodriguez, a physician she consulted before the ALJ's hearing on the merits of her claims.  An ALJ generally gives an opinion from an examining physician greater weight than a non-examining physician, but the agency's rules do not provide that an examining physician's opinion may receive "controlling weight" as a treating source might.  See 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).  A medical source is not a treating source if the claimant's relationship with the source is based solely on the claimant's need to obtain evidence in support of a disability claim.  Id. §§ 404.1527(a)(2), 416.927(a)(2).  In assessing the weight to assign to a medical opinion, the ALJ may also consider, among other factors, the amount of support a

15

medical source provides for an opinion and the consistency of the source's opinion with the record. Id. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4). Opinions about issues reserved to the ALJ are not medical opinions -- particularly, "administrative findings that are dispositive of the case," such as conclusions that a claimant is disabled or unable to work. Id. §§ 404.1527(d), 416.927(d).

In this case, substantial evidence supports the ALJ's finding that Rodriguez was not a treating source because the record showed that Santos sought out Dr. Rodriguez's evaluation for the purpose of gathering evidence for her claims. See id. §§ 404.1527(a)(2), 416.927(a)(2). At her first hearing, Santos expressed reservations about the independence of the agency's consulting physicians. Then, Santos presented to Rodriguez less than 10 days before her second hearing despite not seeking any treatment for approximately three years, contradicting Santos's assertions that she sought out Rodriguez for treatment purposes. Thus, the ALJ did not err in finding that Rodriguez was not a treating source.

Moreover, the ALJ's decision to discredit Rodriguez's opinion was based on substantial evidence in the record. The ALJ found that Dr. Rodriguez's evaluation was less credible because it was based largely on Santos's self-reports that he summarized and Rodriguez provided no elaboration on the methods employed to draw his opinion. Id. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4). Further, Rodriguez's conclusions that Santos suffered from depression to a "disabling

16

degree of severity," which rendered her "non-functional" and "unable to secure gainful employment in any line of work," were legal conclusions reserved to the ALJ's determination of Santos's RFC and overall disability status. Id. §§ 404.1527(d), 416.927(d). Santos's argument that Rodriguez's opinion proved the severity of her impairments is also contradicted by Rodriguez's opinions from subsequent visits, providing that she responded to treatment. Nor did the ALJ err in affording a marginally greater weight to Seifer than Rodriguez because, unlike Dr. Seifer's opinion, Dr. Rodriguez's opinion was sought for the purpose of procuring evidence, was based on Santos's self-reports, and was conclusory.

Finally, we reject Santos's claim that the ALJ improperly considered her testimony about the severity of her symptoms. When a claimant seeks to establish a disability through her own testimony of pain or other subjective complaints, we require (1) evidence of an underlying condition and either (2) objective medical evidence that confirms the severity of the claimant's symptom or (3) that the objectively determined medical condition is of a severity that can be reasonably expected to cause the alleged symptom. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Once the ALJ finds that an impairment exists, the ALJ must consider all evidence about the "intensity, persistence, and functionally limiting effects of pain or other symptoms." Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). If the ALJ discredits a claimant's subjective complaints of disabling

17

symptoms, she must "articulate explicit and adequate reasons" for doing so.  Dyer, 395 F.3d at 1210 (quotations omitted).  A claimant's daily activities, treatment history, and any other relevant factors may be considered in evaluating and discrediting complaints of disabling symptoms.  Harwell v. Heckler, 735 F.2d 1292, 1293 (11th Cir. 1984); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  The ALJ may also consider "inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence."  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

Here, the ALJ correctly analyzed Santos's subjective symptoms under the required standard by finding that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms."  See Dyer, 395 F.3d at 1210.  The ALJ also accurately summarized Santos's testimony, including her testimony about her difficulty leaving her house, her daily activities, and her statements that she become sober three years previously.  Contrary to Santos's arguments, there were inconsistencies in her substance abuse history that negatively affected her credibility.  For example, Dr. Seifer reported that Santos denied history of drug use, Dr. Rodriguez reported that she was "fully sober for 29 years" from the use of cocaine, and Dr. Weber reported that she had a "remote history of drug abuse."  On the other hand, Santos's testimony and Drs. Mahon's and Kurlander's records indicated drug use as late as 2005.

But even without considering the evidence of her substance abuse, Santos's daily activities suggested that her trouble with leaving the house did not rise to the level of disability. The ALJ noted that Santos drove herself to her hearing and was able to go to the grocery store once per week. The record also showed that Santos drove herself to her evaluations, and no evidence suggested that she had cancelled, changed times, or was otherwise unable to attend any of her scheduled appointments or hearings, which was inconsistent with descriptions that she sometimes took days to decide to leave. Although there was no specific evidence in the record about the availability of free treatment, Santos provided a vague description about why she had not obtained any treatment but seemed to recognize that these services existed. Santos's argument that the ALJ improperly factored her financial circumstances into her inability to seek treatment is not reflected in the ALJ's statements at her hearings and the final determination, where the ALJ noted that Santos had financial difficulty in obtaining treatment. Rather, the vagueness in describing her symptoms and inconsistencies over their severity, which were permissible considerations, provided the ALJ with substantial evidence to discredit her testimony. See Harwell, 735 F.2d at 1293; 20 C.F.R. §§ 404.1529(c), 416.929(c). Without further medical evidence in support from the years after her alleged disability onset date, she could not overcome her burden to prove disability. See Ellison, 355 F.3d at 1276.

19

**AFFIRMED**.